IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC FINNERUD,<br>SOUND ALIVE ENTERPRISE, LLC,<br>and DISTROMINT, LLC,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>NCHAIN UK LTD,<br><br>*Defendant and Counterclaim-Plaintiff.* | Civil Action<br>File No.: 1:24-cv-05280-SDG<br><br>**<u>nChain UK's Motion for Summary Judgment</u>**<br><br>**Oral Argument Requested** |

Defendant nChain UK Ltd. ("nChain") moves the Court under Fed. R. Civ. P. 56 to grant summary judgment to nChain and dismiss this action on the grounds that (1) the Court lacks personal jurisdiction over nChain, or, in the alternative, that (2) the undisputed facts entitle nChain to judgment as a matter of law on all of Plaintiffs' claims. This motion is based upon the attached memorandum of law, statement of material facts, exhibits, and the record.

This 30th day of September, 2026.

Respectfully submitted,

*/s/ Samantha R. Mandell*

WITHOUT PREJUDICE TO JURISDICTION

Samantha R. Mandell
Georgia Bar No. 141689
STANTON LAW
410 Plasters Avenue NE, Suite 200
Atlanta, Georgia 30324
Tel. 404-881-1288
samantha.mandell@stantonlawllc.com

Rollo C. Baker IV (admitted *pro hac vice*)
Vivek Tata (admitted *pro hac vice*)
Jared Ruocco (admitted *pro hac vice*)
Sean Foley (admitted *pro hac vice*)
Elizabeth Baines (admitted *pro hac vice*)
ELSBERG BAKER & MARURI PLLC
Empire State Building
350 Fifth Avenue, 38th Floor
New York, New York 10118
Tel. 212-597-2600
rbaker@elsberglaw.com
vtata@elsberglaw.com
jruocco@elsberglaw.com
sfoley@elsberglaw.com
ebaines@elsberglaw.com

*Attorneys for Defendant nChain UK Ltd*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERIC FINNERUD,<br>SOUND ALIVE ENTERPRISE, LLC,<br>and DISTROMINT, LLC,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>NCHAIN UK LTD,<br><br>*Defendant and Counterclaim-Plaintiff.* | Civil Action<br>File No.: 1:24-cv-05280-SDG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NCHAIN UK'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

WITHOUT PREJUDICE TO JURISDICTION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ........................................................................... 3

I. Background and Parties ........................................................................ 3

II. An nChain Slovenia Team Builds the DistroMint Platform While the Parties Continue to Negotiate an Agreement .................................... 4

A. nChain Slovenia Builds the DistroMint Platform in an nChain-Controlled GitHub Repository ............................................... 4

B. Finnerud Forms DistroMint, LLC with Himself and His Wife as the Only Members ............................................................... 5

C. nChain and Finnerud Attempt, But Fail, To Negotiate an Agreement ......................................................................... 6

III. nChain Terminates Ager-Hanssen and the Negotiations End Without an Agreement ........................................................................ 8

A. nChain Pauses Development Because No Contract Existed ................ 8

B. Finnerud Rejects nChain's Proposal ................................................ 9

C. The DistroMint Project Fails .......................................................... 10

IV. The DistroMint Project Enriched Finnerud, But Not nChain ....................... 10

V. Plaintiffs Sue Without Specifying the Terms of the Alleged Agreement ...... 11

LEGAL STANDARD ................................................................................ 11

ARGUMENT ........................................................................................... 12

I. The Court Does Not Have Personal Jurisdiction Over nChain .................... 12

A. nChain Is Not a Member of DistroMint, LLC .................................... 12

1. nChain Never Became a Member of DistroMint, LLC ............ 13

2. Plaintiffs' Conduct Confirms nChain Is Not a Member ........... 14

B. nChain's Georgia Contacts Do Not Support Personal Jurisdiction ....15

1. nChain's Contacts Are Insufficient Under the Constitution ....16

2. nChain's Contacts Are Insufficient Under the Long-Arm Statute ....18

II. Plaintiffs' Contract Claims Fail ....19

A. There Was No "Development Agreement" ....19

1. Plaintiffs Cannot Prove the Existence of a Development Agreement or Its Terms ....20

2. Plaintiffs' Shifting Accounts Show That the Alleged Terms Were Never Definite ....22

3. The Parties Never Agreed and Were Still Negotiating a Year Later ....25

B. Plaintiffs Have No Evidence of Breach ....26

C. Plaintiffs Fail to Show Causation or Damages ....28

III. Plaintiffs Cannot Prove a Breach of Fiduciary Duties (Count IV) ....29

IV. Plaintiffs Cannot Prove Fraud (Count V) ....31

V. Plaintiffs' Unjust Enrichment Claim Fails (Count VII) ....32

VI. Plaintiffs Cannot Prove Conversion (Count VIII) ....33

VII. Alternatively, the Court Should Dismiss the Case for the Same Reasons Stated in nChain's Motion to Dismiss ....34

CONCLUSION ....35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Cagle Foods JV, LLC*,
411 F.3d 1320 (11th Cir. 2005) ....................................................................32

*Advance Med. Designs, Inc. v. Corbin Clinical Res., LLC*,
2022 WL 18776011 (N.D. Ga. Apr. 1, 2022)..........................................................18

*Am. Viking Contractors, Inc. v. Scribner Equip. Co.*,
745 F.2d 1365 (11th Cir. 1984) ....................................................................24

*Asman v. Dykema*,
2016 WL 4582072 (N.D. Ga. Feb. 16, 2016) ..........................................................12

*AST & Sci. LLC v. Delclaux Partners SA*,
143 F.4th 1249 (11th Cir. 2025)....................................................................15

*Atl. Inv. Mgmt., LLC v. Beacon Rock Cap., LLC*,
2006 WL 8431619 (N.D. Ga. Jan. 13, 2006),
*aff'd sub nom*. 193 F. App'x 827 (11th Cir. 2006) .................................................22

*Automated Sols. Enters., Inc. v. Clearview Software, Inc.*,
255 Ga. App. 884 (2002) ...........................................................................31

*Barton v. Peterson*,
733 F. Supp. 1482 (N.D. Ga. 1990) .................................................................27

*Bates v. JPMorgan Chase Bank, NA*,
768 F.3d 1126 (11th Cir. 2014) ....................................................................29

*Bazemore v. Jefferson Cap. Sys., LLC*,
827 F.3d 1325 (11th Cir. 2016) ....................................................................21

*Cargill Ltd. v. Jennings*,
308 F. App'x 385 (11th Cir. 2009)..................................................................33



WITHOUT PREJUDICE TO JURISDICTION

*Complete Concepts, Ltd. v. Gen. Handbag Corp.*,
880 F.2d 382 (11th Cir. 1989) ....................................................................25

*Cone Fin. Grp., Inc. v. Emps. Ins. Co. of Wausau*,
476 F. App'x 834 (11th Cir. 2012) ...............................................................27

*Crayton v. JPMorgan Chase Bank, N.A.*,
2017 WL 5133224 (N.D. Ga. Nov. 6, 2017) ....................................................27

*Cunningham v. Fulton Cnty., Ga.*,
2019 WL 1428346 (N.D. Ga. Mar. 29, 2019),
*aff'd*, 785 F. App'x 798 (11th Cir. 2019) ........................................................20

*Dyer v. Atlanta Indep. Sch. Sys.*,
426 F. Supp. 3d 1350 (N.D. Ga. 2019),
*aff'd*, 852 F. App'x 397 (11th Cir. 2021) ........................................................11

*Fla. Power & Light Co. v. Ga. Power Co.*,
2024 WL 1287025 (N.D. Ga. Mar. 26, 2024) ....................................................30

*Fuss v. Bensch*,
601 F. Supp. 3d 1329 (N.D. Ga. 2022) ............................................................34

*Gen. GMC Trucks, Inc. v. Mercury Freight Lines, Inc.*,
704 F.2d 1237 (11th Cir. 1983) ......................................................................23

*Gray v. Mayberry*,
2021 WL 5774546 (S.D. Ga. Nov. 4, 2021),
*report and recommendation adopted*, 2021 WL 5772094 (Dec. 6, 2021) ...........12

*Grupo Rayco C.A. v. Delta Air Lines, Inc.*,
2024 WL 4522892 (N.D. Ga. Aug. 15, 2024) ....................................................27

*Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*,
2020 WL 12309512 (N.D. Ga. June 5, 2020) ....................................................34

*In re LJL Truck Ctr., Inc.*,
299 B.R. 663 (Bankr. M.D. Ga. 2003) ..............................................................23

*James v. Hunt,*
2017 WL 6619232 (N.D. Ga. Oct. 19, 2017),
*aff'd,* 761 F. App'x 975 (11th Cir. 2018) .......................................................16

*Johnson v. Univ. Health Servs., Inc.*,
931 F. Supp. 1572 (S.D. Ga. 1996),
*aff'd*, 161 F.3d 1334 (11th Cir. 1998) .................................................. 21, 23, 25

*Key v. Naylor, Inc.,*
268 Ga. App. 419 (2004) ............................................................................ 23, 24

*King v. King*,
316 Ga. 354 (2023) .................................................................................... 30, 31

*Landcastle Acquisition Corp. v. First-Citizens Bank & Tr. Co.,*
2017 WL 2813674 (N.D. Ga. June 29, 2017)....................................................33

*Laverson v. Macon Bibb Cnty. Hosp. Auth*.,
226 Ga. App. 761 (1997) ..................................................................................22

*Life Univ., Inc. v. Brain Synergy Inst., LLC*,
2014 WL 12543916 (N.D. Ga. Feb. 7, 2014) ....................................................18

*M.P. Tulsa, LLC v. SH CCRC, LLC*,
2016 WL 4396165 (N.D. Ga. Aug. 17, 2016) ....................................................17

*McTerry v. Free for All Missionary Baptist Church No. 1*,
129 Ga. App. 724 (1973) ..................................................................................24

*Muhammad v. JP Morgan Chase Bank*,
2022 WL 1283939 (N.D. Ga. Mar. 24, 2022).....................................................28

*Newitt v. First Union Nat. Bank*,
270 Ga. App. 538 (2004) ..................................................................................31

*OfficeMax, Inc. v. Sapp*,
132 F. Supp. 2d 1079 (M.D. Ga. 2001) .............................................................26

*Perrigo Co. v. Merial Ltd.*,
215 F. Supp. 3d 1329 (N.D. Ga. 2016) ....................................................... 18, 19



WITHOUT PREJUDICE TO JURISDICTION

*Purnell v. PepsiCo, Inc.*,
2023 WL 6219883 (M.D. Ga. Sept. 25, 2023) ....................34

*ROYL Garage, LLC v. Mighty Oak Fin. LLC*,
2024 WL 1395154 (N.D. Ga. Mar. 31, 2024)....................32

*Souza v. Berberian*,
342 Ga. App. 165 (2017) ....................26

*St. James Ent. LLC v. Crofts*,
837 F. Supp. 2d 1283 (N.D. Ga. 2011) ....................29

*Stuart Enters. Int'l, Inc. v. Peykan, Inc.*,
252 Ga. App. 231 (2001) ....................19

*Wallace v. Cousins*,
2017 WL 10636886 (N.D. Ga. Dec. 28, 2017),
*aff'd sub nom.* 783 F. App'x 910 (11th Cir. 2019) ....................21

*Zeising v. Shelton*,
2014 WL 3571276 (W.D. La. July 18, 2014),
*aff'd,* 599 F. App'x 231 (5th Cir. 2015).................... 14, 22

**Statutes**

O.C.G.A. § 9-10-91.................... 12, 18, 19

O.C.G.A. § 13-3-1.................... 20, 25

O.C.G.A. § 13-3-2....................25

O.C.G.A. § 13-5-30.................... 22, 25

O.C.G.A. § 14-11-505.................... 13, 14, 15

O.C.G.A. § 14-11-308....................15

O.C.G.A. § 23-2-58....................30

**Rules**

Fed. R. Civ. P. 9 ........................................................................................................ 32

Fed. R. Civ. P. 56 ...................................................................................................... 11

## PRELIMINARY STATEMENT

This case arises from failed negotiations over a music-distribution project. Plaintiff Eric Finnerud wanted to build a blockchain-based music-distribution platform, but he could not write code and had no funding. In late 2022, he approached nChain UK Ltd ("nChain"), an English blockchain company. Over the next year, engineers at an nChain affiliate in Slovenia built the platform, and nChain paid Finnerud more than $200,000 in consulting fees and expenses. The parties tried to agree on who would own and operate the platform and other basic terms, but they never did, and the platform never launched. Finnerud, his record company, and DistroMint, LLC (a company he formed with his wife) then sued nChain.

Every claim depends on an alleged "Development Agreement," but Plaintiffs still cannot say what the agreement was. They claim it was formed on a December 12, 2022 video call and memorialized in a February 20, 2023 email, but they have named three different sets of parties to the alleged agreement. They have said nChain would receive half of DistroMint, LLC, or half of the platform and Finnerud's (nonexistent) patent, or an unspecified "50/50 split." And Finnerud, testifying for all Plaintiffs, could not identify any term that nChain allegedly breached or what nChain's purported obligations were under the alleged agreement. The evidence shows why Plaintiffs cannot keep their story straight: no agreement existed. In reply to the February 20, 2023 email, nChain's then-CEO wrote that he

would "arrange an agreement as soon as possible." For the next ten months, the parties negotiated, among other things, ownership percentages, deal structure, and where a project company would be incorporated, and nChain told Finnerud repeatedly that it would not invest through a U.S. company. In late 2023, Finnerud admitted they were still negotiating, and in December 2023 he rejected nChain's final proposal.

But the Court should not reach these issues, because it lacks personal jurisdiction over nChain. Plaintiffs' jurisdictional theory is that nChain is a member of DistroMint, LLC, a Georgia company. It is not. The LLC's only members are Finnerud and his wife, which Finnerud reported to nChain, investors, and the federal government long after he claims nChain became a member. And if nChain were a member, foreign citizens would be on both sides of the case, and there would be no diversity jurisdiction. nChain's remaining contacts are emails and calls with a Georgia resident who contacted nChain first. Those contacts satisfy neither Georgia's long-arm statute nor due process. On the merits, each claim should be dismissed with prejudice. The contract claims fail because there was no agreement, no identified breach, and no causation. The fiduciary duty claim fails because the parties dealt at arm's length, and because it is barred by the economic loss rule. The fraud claim fails because Plaintiffs identify no false statement, and the failure to perform under an alleged contract does not give rise to a fraud claim. The unjust

enrichment claim fails because nChain paid Finnerud over $200,000 and received nothing in return. And the conversion claim fails because nChain owns the computer code, and because it is preempted. The Court should grant summary judgment.

## STATEMENT OF FACTS

### I. Background and Parties

Plaintiff Eric Finnerud, known as E. Smitty, is a record producer based in Lawrenceville, Georgia. SMF ¶¶ 1–2. Finnerud is the sole member of Plaintiff Sound Alive Enterprise LLC, a Georgia LLC and Finnerud's record company. SMF ¶ 3. nChain is a limited company incorporated in England and Wales with its principal place of business in London. SMF ¶ 5. nChain is part of the nChain Group, which, during the relevant period, provided blockchain-related software development, IP licensing, and consulting services. SMF ¶ 5. nChain has no operations, business, or other presence in Georgia. *See* Dkt. 19-1.

In mid-2022, Finnerud decided he wanted to create a music distribution platform that combines traditional music distribution services with blockchain tokenization, which he later named the DistroMint platform. SMF ¶¶ 6, 21, 23. Finnerud filed a provisional patent application with the U.S. Patent and Trademark Office on July 15, 2022. SMF ¶ 7. Finnerud did not know how to code and needed both technical assistance and financing to build the platform. SMF ¶¶ 8, 115.

In November 2022, Finnerud emailed a pitch deck to Christen Ager-Hanssen,



WITHOUT PREJUDICE TO JURISDICTION

the then-CEO of the nChain Group. SMF ¶¶ 10–11. Finnerud organized a video call with Ager-Hanssen on December 12, 2022. SMF ¶¶ 13–14. Finnerud claims he lost his notes of the call and there is no written record of the meeting. SMF ¶ 17.

## II. An nChain Slovenia Team Builds the DistroMint Platform While the Parties Continue to Negotiate an Agreement

### A. nChain Slovenia Builds the DistroMint Platform in an nChain-Controlled GitHub Repository

Finnerud attended an introductory call with a technical development team from nChain Slovenia on December 19, 2022. SMF ¶ 30. From January through September 2023, Finnerud attended remote meetings with the development team. SMF ¶ 45. While Finnerud offered his input on non-technical aspects of what the DistroMint platform should include, nChain Slovenia's development team alone created the source code and built the DistroMint platform from a technical perspective. SMF ¶¶ 45, 47. The development team stored the DistroMint platform's source code in an nChain-controlled GitHub repository, which Finnerud never had access to. SMF ¶¶ 48–49. All this work took place outside the United States. SMF ¶ 46. nChain owns the code's copyright. SMF ¶ 50.

The development team was close to completing a minimum viable product ("MVP") for the DistroMint platform around March 2023. SMF ¶ 56. Finnerud wrote none of the DistroMint platform's source code. SMF ¶ 47. Despite Finnerud's lack of technical contributions, nChain paid Finnerud a total of $175,000 in

"consultancy" fees through 2023. SMF ¶ 107.

### B. Finnerud Forms DistroMint, LLC with Himself and His Wife as the Only Members

On February 20, 2023, Finnerud organized DistroMint, LLC as a Georgia member-managed limited liability company with himself and his wife, Destiny Perry, as the sole members.[1] SMF ¶¶ 34–35. The same day, he emailed Ager-Hanssen stating that, on behalf of Sound Alive, he "agree[s] to the terms of 50/50 Partnership of Distromint, LLC" with nChain UK. SMF ¶ 36. In response, Ager-Hanssen stated that he would "***arrange an agreement*** as soon as possible." SMF ¶ 38 (emphasis added). Yet, Finnerud now says this email memorialized the alleged agreement reached on December 12. SMF ¶¶ 18–20.

On February 22, 2023, two days after the February 20 email exchange, DistroMint, LLC's Initial Resolutions were executed and resolved to organize the company on February 20 with two members: Finnerud and Perry. SMF ¶ 39. The Initial Resolutions also attached, among other draft documents, an unsigned operating agreement listing Finnerud and Perry as the LLC's sole members. SMF ¶ 39. DistroMint never adopted an operating agreement. SMF ¶ 41. Contrary to Plaintiffs' interrogatory responses, which claim Finnerud and Perry met on February 20, 2023 to transfer an interest in DistroMint, LLC to nChain, Finnerud admitted in

[1] In 2023, Finnerud represented to nChain that the DistroMint project company would be run by Sound Alive, not himself and Perry. SMF ¶ 33.

deposition that they never met to discuss DistroMint, LLC, never passed a formal resolution to add nChain as a member of DistroMint, LLC, and never otherwise altered the LLC's membership. SMF ¶¶ 40–42. nChain never executed any DistroMint, LLC operating agreement, resolutions, or other governing document, and never reported any ownership interest in DistroMint, LLC in any internal or external documents—because nChain never held any such interest. *See* SMF ¶ 43.

Finnerud has consistently represented DistroMint, LLC as his company, without mentioning nChain's alleged ownership interest. For example, in March 2023, Finnerud confirmed to nChain that he and Perry were the sole members of DistroMint, LLC. SMF ¶ 44. Finnerud also represented himself as the sole owner of DistroMint, LLC and/or the DistroMint platform when attempting to raise funds for the DistroMint platform beginning in November 2023, including in a grant application to the U.S. government. SMF ¶¶ 116–122. And in a January 2024 demand letter Finnerud served on nChain through the law firm Valhil Law, PC, Finnerud called himself the "sole equityholder of DistroMint, LLC." SMF ¶ 106.

**C. nChain and Finnerud Attempt, But Fail, To Negotiate an Agreement**

In June 2023, Ager-Hanssen instructed Dale Evans, a member of nChain's legal team, to draft an agreement regarding ownership of the DistroMint platform. SMF ¶ 64. Evans, on behalf of nChain, met with and spoke to Finnerud from June through August of 2023 to discuss the terms of a coming agreement. SMF ¶¶ 61,

66–75. Throughout the negotiations, nChain repeatedly told Finnerud that it would not agree to invest through a U.S. entity, including DistroMint, LLC, due to the regulatory risk the business might face in the United States. *See* SMF ¶¶ 65–76. The negotiations therefore focused on where a project company might safely be incorporated. *See* SMF ¶¶ 65–76. Finnerud expressed to both Evans and the Slovenia development team that he understood nChain's regulatory and jurisdictional concerns. SMF ¶¶ 67–68, 72. At no point did nChain express willingness to invest or acquire an interest in DistroMint, LLC or any other U.S.-based entity. *See* SMF ¶¶ 65–76.

On July 28, 2023, Evans presented a potential investment structure for the DistroMint project to Finnerud via Microsoft Teams. SMF ¶ 69. The proposed investment structure contemplated Finnerud and nChain owning 51% and 49% respectively of the DistroMint project company, which would be incorporated in the United Kingdom and subject to UK law. SMF ¶ 69. Finnerud and nChain would execute a collaboration agreement, and Finnerud would continue to provide consultancy services. SMF ¶ 69. That proposal differs from the agreement Plaintiffs now allege: it gave nChain 49% rather than 50%, and it placed ownership in a new UK company rather than in DistroMint, LLC. SMF ¶ 69; *cf.* SMF ¶ 21.

Evans and Finnerud continued to negotiate through August, with a focus on jurisdictional and regulatory issues. SMF ¶¶ 72–75. By the end of August, Evans

ruled out several European options but identified the British Virgin Islands as a potentially viable target. SMF ¶ 73. Finnerud continued to express understanding of, and agreement with, the jurisdictional issue to both Evans and the development team, even doing his own research on mechanics of incorporation in the British Virgin Islands. SMF ¶ 74. As of September 2023, nChain and Finnerud had not agreed on a jurisdiction, and no agreement was in place. SMF ¶ 76.

## III. nChain Terminates Ager-Hanssen and the Negotiations End Without an Agreement

### A. nChain Pauses Development Because No Contract Existed

nChain Group terminated Christen Ager-Hanssen as CEO for serious misconduct on or around September 27, 2023. SMF ¶ 86. Following Ager-Hanssen's termination, nChain halted all projects "that have no legal ground (contract)," including the DistroMint project. SMF ¶ 88. Finnerud expressed frustration but acknowledged, repeatedly, that he and nChain were "***in the middle of negotiating the contract/agreement***" when Ager-Hanssen was terminated and did not have an agreement in place. SMF ¶¶ 89–91. When Finnerud asked the development team to resume work, the development team confirmed that there was no clearance to do so, i.e., no agreement had been reached. SMF ¶ 92.

Finnerud alleges that, in October 2023, nChain severed his access to the DistroMint platform. *See* Compl. ¶¶ 56–57. Finnerud has since admitted this core allegation is false: the platform itself was hosted on Amazon Web Services

("AWS"), in an account owned and paid for ***by Finnerud***. SMF ¶ 51. Only Finnerud could control the account, and only he could assign additional members to it. SMF ¶ 52. Finnerud provided nChain personnel with credentials and administrative access to the account. SMF ¶ 53. Indeed, Finnerud admitted that he lost access to the AWS account because he stopped paying the AWS fees. SMF ¶ 55.

**B. Finnerud Rejects nChain's Proposal**

On December 14, 2023, Evans sent Finnerud a "Restructure Proposal" and offered to create documentation for a formal agreement if Finnerud agreed with the proposed structure. SMF ¶¶ 93, 95. nChain intended this proposal to "restructure" the positions the parties found themselves in as of early December 2023, in which Finnerud had no "ownership of anything that would have been helpful in the future operation . . . of the platform," including its source code. SMF ¶ 94. Under the proposal, nChain would not take equity in a project company; instead, it would hold convertible debt equal to the money it had already spent on the DistroMint project. SMF ¶ 104. The proposal also confirms that nChain never agreed to own an interest in a U.S. project company. *See* SMF ¶¶ 100–101. A column in the proposal labeled "Current Position" summarizes where the negotiations stood; it does not describe an existing agreement. SMF ¶ 97. Finnerud himself testified that there were several "inaccuracies" in the "current position" column, conceding the restructuring proposal does not evidence an existing agreement. *See* SMF ¶ 98. Finnerud rejected

the proposal, and the parties never reached a definitive agreement. SMF ¶ 105.

**C. The DistroMint Project Fails**

Since negotiations with nChain failed, Finnerud has not completed or launched the DistroMint platform. SMF ¶ 133. Plaintiffs do not own the source code (nChain does), nor have they raised funds or garnered interest from investors. SMF ¶¶ 50, 122. The DistroMint platform never had any customers or any revenue. SMF ¶ 133. The DistroMint platform and LLC both failed before they got started.

**IV. The DistroMint Project Enriched Finnerud, But Not nChain**

While the nChain Slovenia team built the DistroMint platform, nChain paid Finnerud through Sound Alive a total of $175,000 in consulting fees. SMF ¶ 107. In addition, nChain paid Finnerud $44,377.25 for expenses claimed by Finnerud, despite Finnerud not submitting receipts for those expenses and many of those expenses being unrelated to his work with nChain. SMF ¶¶ 108–110.

nChain never obtained any interest in DistroMint, LLC, *supra* II.B., or Finnerud's patents, SMF ¶ 113, which were rejected for a lack of novelty internationally and were also rejected in the U.S. SMF ¶¶ 83–85. nChain did not develop further products from its work on the DistroMint platform. SMF ¶ 114. Finnerud also never paid any money to nChain for the work it performed in connection with developing the unlaunched DistroMint platform. SMF ¶ 112.

## V. Plaintiffs Sue Without Specifying the Terms of the Alleged Agreement

Plaintiffs filed this action on October 5, 2024. Dkt. 1-2. The Complaint alleges that nChain breached a "Development Agreement" but does not state its terms. nChain moved to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim. The Court deferred ruling pending fact development. *See* Dkt. 60. The record now affirms nChain's jurisdictional and merits arguments.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dyer v. Atlanta Indep. Sch. Sys.*, 426 F. Supp. 3d 1350, 1357 (N.D. Ga. 2019) (citations omitted), *aff'd*, 852 F. App'x 397 (11th Cir. 2021). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* Where the nonmoving party would have the burden of proof at trial, the moving party satisfies this initial burden by producing "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial," or by showing that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 1358. "If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial." *Id.*

## ARGUMENT[2]

### I. The Court Does Not Have Personal Jurisdiction Over nChain

The Court may exercise personal jurisdiction over nChain only if doing so is (1) appropriate under Georgia's long-arm statute, O.C.G.A. § 9-10-91, and (2) consistent with the Due Process Clause of the Fourteenth Amendment. *See Asman v. Dykema*, 2016 WL 4582072, at *2 (N.D. Ga. Feb. 16, 2016). At summary judgment, Plaintiffs must "present[] enough evidence to withstand a motion for directed verdict by putting forth substantial evidence … of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Gray v. Mayberry*, 2021 WL 5774546, at *4 (S.D. Ga. Nov. 4, 2021), *report and recommendation adopted*, 2021 WL 5772094 (Dec. 6, 2021). The facts alleged in the complaint are taken as true only to the extent they are uncontroverted; if "the defendant submits affidavits challenging the allegations in the complaint, however, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* Plaintiffs fail to meet their burden.

#### A. nChain Is Not a Member of DistroMint, LLC

Plaintiffs argue this Court has personal jurisdiction over nChain because it is allegedly a member of DistroMint, LLC, a Georgia company, and they allege

---

[2] Plaintiffs voluntarily dismissed their declaratory judgment (Count I) and negligence (Count VI) claims, so this brief does not address those claims. *See* MTD Opp. (Dkt. 36) at 39.



WITHOUT PREJUDICE TO JURISDICTION

DistroMint, LLC was the mechanism through which nChain invested in the platform. *See* Dkt. 56 (MTD Hr. Tr.) at 36; SMF ¶ 131. The undisputed record shows that nChain was never a member of DistroMint, LLC, so this theory fails.

1. <u>nChain Never Became a Member of DistroMint, LLC</u>

DistroMint, LLC's corporate records indicate it only ever had two members: Eric Finnerud and Destiny Perry, Finnerud's wife. *See* SMF ¶¶ 34–35, 44. Plaintiffs admit this. SMF ¶ 35. Plaintiffs nonetheless argue that Finnerud's February 20, 2023 email stating that Sound Alive "agree[s] to the terms of 50/50 Partnership of Distromint, LLC" with nChain (*see* SMF ¶ 36) made nChain a member. This argument fails as a matter of law. Georgia law sets out how a new member is admitted to an existing LLC. An entity can be admitted directly to the LLC "upon compliance with the articles of organization and any written operating agreement or, if the articles of organization or a written operating agreement does not so provide, upon (i) the consent of all members and (ii) when the person's admission is reflected in the records of the LLC." O.C.G.A. § 14-11-505(b). Or an entity can be admitted as an assignee if (i) all existing members consent, (ii) the admission is reflected in the LLC's records, and (iii) the assignee consents to becoming a member. O.C.G.A. § 14-11-505(c). None of the requirements were met.

*First*, an email from Finnerud cannot manifest assent on behalf of nChain; nChain never accepted membership. *See* SMF ¶¶ 36–37. nChain never consented,

and never planned to consent, to a U.S.-based project company due to U.S. regulations. *See* SMF ¶¶ 65–76, 100–101. For that reason, in August 2023, months after establishing DistroMint, LLC, *Finnerud* himself investigated incorporating "DistroMint" in the British Virgin Islands. SMF ¶ 74. *Second*, DistroMint, LLC has not produced ***any*** member consents and nothing in the record shows that Perry consented. SMF ¶¶ 36–37, 40–43. Finnerud admitted that—contrary to his prior representations—he never met with Perry to transfer membership to nChain. *See* SMF ¶ 40. *Third*, as Finnerud himself has admitted, no corporate records (including membership consent forms, resolutions, stockholder certificates, operating agreements, or ledgers) reflect nChain's alleged membership or admission. SMF ¶¶ 42–43. The Initial Resolutions, executed two days ***after*** the February 20, 2023 email, list Finnerud and Perry as the only members, SMF ¶ 39. In any case, an email from one member to a third party, such as the February 20 email, is not an LLC record. *See Zeising v. Shelton*, 2014 WL 3571276, at *6 (W.D. La. July 18, 2014) (applying O.C.G.A. § 14-11-505 and stating "no members were listed in Dixie's Articles of Organization or that the LLC had no formal records which might indicate admission of members"), *aff'd*, 599 F. App'x 231 (5th Cir. 2015).

2. Plaintiffs' Conduct Confirms nChain Is Not a Member

Finnerud's conduct from 2023 onward confirms that nChain was never a member of DistroMint, LLC. In March 2023, Finnerud confirmed to nChain that he

and Perry were the only members. SMF ¶ 44. In November 2023, Finnerud held out DistroMint, LLC as his own company when he attempted to garner interest from potential investors. SMF ¶¶ 116-121. In a January 2024 demand letter to nChain, Plaintiffs admitted that nChain was not a member of DistroMint, LLC and did not otherwise hold equity in the LLC. *See* SMF ¶ 106. Finnerud alone decided to retain counsel and sue nChain on behalf of DistroMint, LLC; if nChain were one of two LLC members, as Plaintiffs allege, he would have needed nChain's consent—but of course, nChain never consented to sue itself. SMF ¶¶ 124–125; *see* O.C.G.A. § 14-11-308(a)(1). Finnerud alone served as the Rule 30(b)(6) witness for DistroMint, LLC; he never consulted nChain. SMF ¶ 127.

Because none of the requirements under O.C.G.A. § 14-11-505 for becoming an LLC member were satisfied, nChain never became a member of DistroMint, LLC. The Court cannot exercise personal jurisdiction over nChain on that basis.[3]

**B. nChain's Georgia Contacts Do Not Support Personal Jurisdiction**

Without the LLC membership theory, Plaintiffs are left to rely on two kinds of contacts: (i) nChain's video calls and emails with Finnerud to negotiate an

[3] Should the Court find nChain is a member, it should dismiss this case for lack of subject matter jurisdiction. As the Court has recognized, nChain's LLC membership would render DistroMint, LLC a citizen of the UK and destroy diversity of citizenship. Dkt. 60 at 11-13; *AST & Sci. LLC v. Delclaux Partners SA*, 143 F.4th 1249, 1252 & n.2 (11th Cir. 2025) (district court lacked diversity jurisdiction where foreign entities were on both sides of the dispute).

agreement that never materialized, and (ii) nChain Slovenia's meetings with Finnerud over Teams to discuss the DistroMint platform. Finnerud, not nChain, initiated the relationship. SMF ¶ 14. These contacts exist only because Finnerud happened to be in Georgia when he took part in calls and videoconferences. They do not satisfy Georgia's long-arm statute or the Due Process Clause.

The rest of the parties' relationship centered in Europe: all coding for the DistroMint platform occurred in Slovenia, not Georgia. SMF ¶ 46. No member of nChain's team ever traveled to Georgia to work with Finnerud; Finnerud, by contrast, traveled to the London Blockchain Conference to meet with nChain. SMF ¶¶ 46, 58. Finnerud's non-provisional patent application was prepared by UK lawyers under an engagement governed by the laws of England and Wales. SMF ¶¶ 78–79.

1. nChain's Contacts Are Insufficient Under the Constitution

A State may exercise specific jurisdiction only over a defendant that has "certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *James v. Hunt,* 2017 WL 6619232, at *1 (N.D. Ga. Oct. 19, 2017), *aff'd,* 761 F. App'x 975 (11th Cir. 2018) (citations omitted). "The 'minimum contacts' required to confer personal jurisdiction over a nonresident may not be merely random, fortuitous, or attenuated"; rather, "it is essential in each case that there be some act by which the defendant

purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *M.P. Tulsa, LLC v. SH CCRC, LLC*, 2016 WL 4396165, at *4 (N.D. Ga. Aug. 17, 2016) (citations omitted). "The relationship must arise out of contacts that the defendant himself creates with the forum state"; "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at *5.

*M.P. Tulsa* is on point: "Even if [nChain] solicited [a] contract knowing that Plaintiff was a Georgia corporation, that knowledge cannot create sufficient minimum contacts with Georgia" as it "would improperly attribute[ ] [Plaintiffs'] forum connections to [nChain]." *Id*. "As for [nChain's] alleged forum contacts, [nChain] directed some emails [][4] and phone calls to Plaintiff[s] in Georgia, but this activity alone is insufficient to establish personal jurisdiction" because "these isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Id.*

And just like in *M.P. Tulsa*, "it is evident that [nChain] did not purposefully direct [its] activities to Georgia in any way." *Id.* nChain also "is not authorized to do business in Georgia, does not have offices, employees, [or] real property in Georgia, and does not have a registered agent in Georgia." *Id.; see* Dkt. 19-1. As

[4] While *M.P. Tulsa* involved payments to a Georgia bank account, nChain wired Finnerud's payments to a bank in *Mississippi*. *Compare* SMF ¶ 107 *with* 2016 WL 4396165, at *4.

Finnerud and his entity, Sound Alive, are the only links between nChain and Georgia, the Court does not have personal jurisdiction over nChain.

2. <u>nChain's Contacts Are Insufficient Under the Long-Arm Statute</u>

Georgia's long-arm statute allows courts to exercise jurisdiction over a non-resident defendant who (a) transacts business in Georgia; (b) committed a tort in Georgia; or (c) caused a tortious injury in Georgia from out-of-state, but only if the defendant regularly does or solicits business in the state. *See* O.C.G.A. § 9-10-91. There is no evidence that nChain committed a tortious act in Georgia or "regularly does or solicits business" in Georgia. *Id.* The only question is whether nChain "transacts business in Georgia." *Id.* It does not.

As noted above, Finnerud initiated contact with nChain, not vice versa. The alleged ensuing contacts—video calls and emails—are insufficient for jurisdiction because "[u]nder the Georgia long-arm statute, courts have been unwilling to find that a defendant 'transacts business' when the contact only involves telephonic and mail communications to a plaintiff located in the state." *Advance Med. Designs, Inc. v. Corbin Clinical Res., LLC*, 2022 WL 18776011, at *4 (N.D. Ga. Apr. 1, 2022). Furthermore, "mere negotiations (without a future course of conduct or executed agreement) do not support personal jurisdiction under the Georgia Long-Arm statute's transacting business section." *Life Univ., Inc. v. Brain Synergy Inst., LLC*, 2014 WL 12543916, at *4 (N.D. Ga. Feb. 7, 2014); *see also Perrigo Co. v. Merial*

*Ltd.*, 215 F. Supp. 3d 1329, 1340 (N.D. Ga. 2016) ("[M]ere negotiation—consisting of nothing more than email and phone traffic directed to lawyers in Georgia—cannot alone constitute transacting business for purposes of § 9-10-91.").[5] Exercising personal jurisdiction over nChain would not comport with Georgia's long-arm statute.

## II. Plaintiffs' Contract Claims Fail[6]

Even if this Court were to exercise jurisdiction over nChain (it should not), it should grant summary judgment on behalf of nChain on all claims. Plaintiffs bring two contract claims: a breach of the purported "Development Agreement," and a breach of the implied covenant of good faith and fair dealing. A breach of the implied covenant is not an independent cause of action under Georgia law, so the Court should dismiss Count III outright. *See Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 234 (2001). In any case, nChain is entitled to summary judgment on both contract claims.

### A. There Was No "Development Agreement"

"The party asserting the existence of a contract has the burden of proving its

---

[5] Even if nChain and any of the Plaintiffs had executed a contract (they did not), "[c]ontracting with a party who itself resides in Georgia . . . does not alone give rise to a Georgia-based business transaction," *Perrigo,* 215 F. Supp. 3d, at 1341.

[6] Plaintiffs assume, without explanation, that Georgia law governs their claims. Solely for purposes of this motion, and without waiving any argument as to the proper choice of law, nChain cites Georgia law.

existence and its terms." *Cunningham v. Fulton Cnty., Ga.*, 2019 WL 1428346, at *2 (N.D. Ga. Mar. 29, 2019) (citation omitted), *aff'd*, 785 F. App'x 798 (11th Cir. 2019) (citation modified). To constitute a valid contract, there must be "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. §13-3-1. Plaintiffs do not meet this burden.

1. Plaintiffs Cannot Prove the Existence of a Development Agreement or Its Terms

Plaintiffs did not plead the terms of the alleged agreement in the Complaint. *See* MTD (Dkt. 19) at 12. Plaintiffs' interrogatory responses now claim that Finnerud and nChain formed an oral agreement on December 12, 2022, reduced to writing in a February 20, 2023 email, with the terms: "nChain UK LTD agreed to commit its resources towards the development, support, and launch of Eric Finnerud's platform and patent: Blockchain Distribution W /NFT Minting and DistroMint, LLC"; "Sound Alive and nChain UK LTD agreed to a split ownership of fifty percent"; "nChain UK LTD agreed to compensate Eric Finnerud through Sound Alive at a rate of $12,500.00 per month for consulting services nChain UK LTD required as part of its development and support of DistroMint." SMF ¶ 21.

To the extent Plaintiffs expect this late recitation of the alleged agreement to salvage their case, they are mistaken. "[C]onclusory, self-serving [statements] that [are] unsupported by any fact in evidence . . . are insufficient to enable the non-

moving party to withstand summary judgment." *Wallace v. Cousins*, 2017 WL 10636886, at *4 (N.D. Ga. Dec. 28, 2017) (citation omitted), *aff'd sub nom.* 783 F. App'x 910 (11th Cir. 2019); *see also Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (finding no agreement existed, noting "this court has consistently held that conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment") (citation omitted).

In any case, the record refutes this conclusory, self-serving account. The February 20 email states only that Sound Alive "agree[s] to the terms of 50/50 Partnership of Distromint, LLC." SMF ¶ 36. It says nothing about nChain's development of or support for the platform (or a blank check commitment to its launch), Finnerud's patent applications or consulting fees, and no other document contains the combination of terms that Plaintiffs describe. *See Bazemore*, 827 F.3d at 1330–31 (affirming no arbitration agreement existed where the plaintiff failed to produce evidence of the alleged agreement's terms). In addition, the December 12 call could not have produced an agreement to divide ownership of DistroMint, LLC, because that company did not even exist until February 20, 2023, and even when it was created Finnerud and his wife—*not nChain*—were the members. SMF ¶ 34. *See also Johnson v. Univ. Health Servs., Inc.*, 931 F. Supp. 1572, 1582 (S.D. Ga. 1996), *aff'd*, 161 F.3d 1334 (11th Cir. 1998) (rejecting, at summary judgment, an alleged agreement based on an "often confusing jigsaw puzzle of preliminary

discussions"); *see also Zeising*, 2014 WL 3571276, at *4. The Court should grant summary judgment on this ground alone.

2. Plaintiffs' Shifting Accounts Show That the Alleged Terms Were Never Definite

"Under Georgia law, a contract cannot be enforced if its terms are incomplete, vague, indefinite or uncertain." *Atl. Inv. Mgmt., LLC v. Beacon Rock Cap., LLC*, 2006 WL 8431619, at *6 (N.D. Ga. Jan. 13, 2006), *aff'd sub nom*. 193 F. App'x 827 (11th Cir. 2006). "The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance where these are essential." *Laverson v. Macon Bibb Cnty. Hosp. Auth.*, 226 Ga. App. 761, 762 (1997). A contract "cannot be enforced in any form of action if its terms are incomplete or incomprehensible." *Id.* If a contract "fails to establish an essential term and leaves the settling of that term to be agreed upon later [by the parties to the contract], the contract is deemed an unenforceable 'agreement to agree.'" *Atl. Inv. Mgmt.*, 2006 WL 8431619, at *3. Additionally, Georgia's Statute of Frauds provides that "any agreement that is not to be performed within one year from the making thereof" must be in writing. O.C.G.A. § 13-5-30(5).

*First*, the terms of a purported contract were so vague that Plaintiffs themselves cannot get their story straight about what the contract supposedly included. Plaintiffs have at different times identified three different sets of parties

to the alleged agreement: Sound Alive and DistroMint, LLC; Finnerud, Sound Alive, and nChain; and Sound Alive and nChain. SMF ¶ 27. They have identified different sets of members for the project company: Finnerud and Perry; Finnerud, Perry, and nChain; and Sound Alive and nChain, though the record evidence shows only Finnerud and Perry were ever members. SMF ¶¶ 24, 36. And they have given four different descriptions of what nChain was to receive: a 50% interest in DistroMint, LLC alone; 50% of the platform and (nonexistent) patent; 50% of the "company" and the "IP"; and a "50/50 split" of something unspecified. SMF ¶ 25. These inconsistencies come, in part, from Plaintiffs' interrogatory responses and Finnerud's deposition testimony. *See* SMF ¶¶ 24-25, 27, 36. A party that cannot say who agreed to a contract, or what the contract gave each side, cannot show that the contract terms were definite. *See Johnson,* 931 F. Supp. at 1582 (granting summary judgment where the plaintiff "fails to set forth a clear and specific expression of the agreement she seeks" and was "unable to recall the terms or details of the [alleged agreement]"); *Gen. GMC Trucks, Inc. v. Mercury Freight Lines, Inc.*, 704 F.2d 1237, 1240 (11th Cir. 1983) (granting summary judgment where the identity of the parties to the agreement was "a completely open question," a "deficiency [that] is incurable"); *In re LJL Truck Ctr., Inc.*, 299 B.R. 663, 668 (Bankr. M.D. Ga. 2003) (disallowing a claim where, other than one party, "it is unclear who the parties to the contract are."); *Key v. Naylor, Inc.,* 268 Ga. App. 419, 422 (2004) (affirming summary judgment

where the contract was "anything but definite" in terms of what the defendant was to receive). Because the alleged contract was indefinite as to its key terms, there is no enforceable agreement, and nChain is entitled to summary judgment.

*Second*, the alleged agreement omits terms essential to any enforceable contract. Most significantly, it does not define either nChain's or Finnerud's obligations. Plaintiffs say nChain agreed to "commit its resources towards the development, support, and launch of Eric Finnerud's platform," but nothing in the record states what resources, in what amount, or for how long. The alleged agreement is equally silent about Finnerud's obligations: no document or deposition testimony describes what his "consultancy" required or what milestones he had to meet. Georgia courts do not enforce agreements that leave terms like these undefined; otherwise, nChain would be obligated to provide a blank check for "resources" and Finnerud to perform whatever "consulting" services nChain required, until the end of time. That is absurd. *See, e.g.*, *McTerry v. Free for All Missionary Baptist Church No. 1*, 129 Ga. App. 724, 724 (1973) (affirming dismissal of breach of contract claim where "[t]he contract here contains no description of the nature and character of the services to be performed by plaintiff or when or where the duties are to be performed"); *Key*, 268 Ga. App. at 422 (affirming summary judgment because "the failure of the contract to state what [plaintiff's] duties were and to specify a place where they would be performed are fatal to the contract"); *Am.*

*Viking Contractors, Inc. v. Scribner Equip. Co.*, 745 F.2d 1365, 1369 (11th Cir. 1984) (affirming summary judgment where an agreement did not specify the duration of the payment period or the amount of the payments). Additionally, an indefinite, unwritten contract to provide "resources" violates the Georgia Statute of Frauds, O.C.G.A. § 13-5-30(5).

3. The Parties Never Agreed and Were Still Negotiating a Year Later

A valid contract requires mutual assent from the parties to the contract's terms. O.C.G.A. §§ 13-3-1, 13-3-2. "The essence of mutual assent is the meeting of the minds of the parties, and both parties must concur in all terms of the proposed contract, agreeing to the same thing in the same sense." *Complete Concepts, Ltd. v. Gen. Handbag Corp.*, 880 F.2d 382, 394 (11th Cir. 1989). The undisputed facts show that the parties never mutually assented to the alleged Development Agreement.

*First*, in response to the February email that Plaintiffs claim memorialized the Agreement, Ager-Hanssen responded: "I will arrange an agreement as soon as possible," confirming that nChain had not yet assented to any contract. SMF ¶ 38. Tellingly, Finnerud did not object to this forward-looking language indicating that no agreement had yet been reached, and nChain never followed up with an agreement. Plaintiffs cannot "infer mutuality from [their] own unilateral assent." *Johnson,* 931 F. Supp. at 1582. Even after Ager-Hanssen's termination in September 2023, Finnerud repeatedly admitted that he and nChain had not yet reached an

agreement and were "***in the middle of negotiating the contract/agreement***". SMF ¶¶ 89-91. This contemporaneous, documented evidence *from Plaintiffs* demonstrates that no enforceable agreement had been reached in December 2022 or February 2023, contrary to Finnerud's litigation position.

*Second*, the parties negotiated basic terms of a possible agreement throughout 2023, including where the project company would be incorporated, how much of it nChain and Finnerud would own, how the transaction would be structured, and which law and forum would govern. SMF ¶¶ 64-76, 93-106. Those terms were still open when nChain sent the December 14, 2023 Restructure Proposal, a year after the alleged agreement, SMF ¶¶ 93-106, with nChain stating repeatedly that it would not invest through a company incorporated in the United States. SMF ¶¶ 64-76, 93-106. "[T]he parties' continued negotiations demonstrate that they had not reached agreement on all material terms." *Souza v. Berberian*, 342 Ga. App. 165, 168 (2017); *see also OfficeMax, Inc. v. Sapp*, 132 F. Supp. 2d 1079, 1083 (M.D. Ga. 2001) (letter of intent was not an enforceable contract because "[n]egotiations on [a] [key] issue continued for months after the signing"). Finnerud rejected the December 14, 2023 proposal. SMF ¶ 105.

**B. Plaintiffs Have No Evidence of Breach**

Even if a contract existed (it does not), Plaintiffs fail to identify the provision nChain allegedly breached. When asked in deposition how nChain breached the

Development Agreement, Finnerud (on behalf of himself and as the Rule 30(b)(6) witness for the plaintiff entities) refused to answer and instead pointed to the Complaint. SMF ¶ 130. But the Complaint itself is not evidence, *Barton v. Peterson*, 733 F. Supp. 1482, 1491 (N.D. Ga. 1990) ("A complaint is not evidence, and is not sufficient to defeat a summary judgment, when the non-movant is required to present specific facts."), and it merely alleges in conclusory fashion that "Defendants breached their express written or oral contracts as well as their implied contracts with, and promises to, Plaintiffs by improperly performing the terms and obligations contained in the Development Agreement and by failing to disclose the true nature of Defendants' practices and procedures." Compl. ¶ 94. Plaintiffs' failure to identify which provision nChain breached, much less prove it, entitles nChain to summary judgment on the contract claims. *See, e.g.*, *Grupo Rayco C.A. v. Delta Air Lines, Inc.*, 2024 WL 4522892, at *5 (N.D. Ga. Aug. 15, 2024) ("[B]ecause [Plaintiff] failed to identify a specific contract provision that [Defendant] breached …, this portion of his breach-of-contract claim fails as a matter of Georgia law, and [Defendant] is entitled to summary judgment."); *Crayton v. JPMorgan Chase Bank*, *N.A.*, 2017 WL 5133224, at *5 (N.D. Ga. Nov. 6, 2017) (granting summary judgment on breach of contract where "the Plaintiff has failed to identify a specific contractual provision that [Defendant] breached"); *Cone Fin. Grp., Inc. v. Emps. Ins. Co. of Wausau*, 476 F. App'x 834, 836 (11th Cir. 2012) (affirming dismissal of a breach of contract claim

via the implied covenant where Plaintiff failed to identify an express breach).

Regardless, even under Plaintiffs' description of the alleged agreement, SMF ¶ 21, nChain fulfilled each of its putative obligations: nChain compensated Finnerud for "consultancy services" at a rate of $12,500 per month for the full 12-month period stated in Finnerud's initial invoice, SMF ¶¶ 28, 107, and nChain committed an entire team, and over $675,000 in total, toward the "development, support and launch" of the DistroMint platform, SMF ¶¶ 21, 104. To the extent Plaintiffs understand the final "key term," "split ownership of fifty percent," to refer to ownership of DistroMint, LLC, nChain could not have breached it because only Finnerud and Perry, as the founding members of DistroMint, LLC, could have transferred an ownership share to nChain (and Sound Alive).[7] SMF ¶¶ 21, 34–44. The Court should grant summary judgment on the contract claims.

**C. Plaintiffs Fail to Show Causation or Damages**

Plaintiffs must prove that nChain's alleged breach caused Plaintiffs' alleged damages. *See Muhammad v. JP Morgan Chase Bank*, 2022 WL 1283939, at *3 (N.D. Ga. Mar. 24, 2022). Plaintiffs appear to allege damages equal to the full value of "DistroMint." *See* Dkt. 115-2. However, because the record is devoid of any evidence tying nChain's alleged breach to Plaintiffs' damages theory, nChain is

[7] As established *supra* § I.A.1, Plaintiffs never made nChain a member of DistroMint, LLC. So, if there was a contract, Plaintiffs breached it, and the Court should grant summary judgment on nChain's counterclaim.

entitled to summary judgment. *See, e.g., Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1133 (11th Cir. 2014) ("[B]ecause Bates has failed to put forward any evidence of damages caused by the purported breach of these contract terms or seek any cognizable relief, we conclude that summary judgment properly was granted against Bates on her breach of contract claims.").

Alternatively, the Court should limit Plaintiffs' damages to nominal damages as a matter of law. As explained in nChain's *Daubert* Motion,[8] Plaintiffs' damages and valuation theory is wholly unsubstantiated and speculative. *See* Dkt. 115. As Plaintiffs have otherwise failed "to present any evidence by which a jury could determine actual damages," they cannot claim more than nominal damages. *St. James Ent. LLC v. Crofts*, 837 F. Supp. 2d 1283, 1290 (N.D. Ga. 2011) (limiting claim to nominal damages because of failure "to present any evidence by which a jury could determine actual damages").

## III. Plaintiffs Cannot Prove a Breach of Fiduciary Duties (Count IV)

Plaintiffs allege nChain breached its "fiduciary, or special duties" by violating the Development Agreement. Compl. ¶¶ 103-108. This claim is without merit.

[8] Plaintiffs' expert report does not discuss lost profits, loss of goodwill, or other consequential damages, *see* Dkt. 115-2, and the record is devoid of any evidence supporting those damages. Plaintiffs should be barred from pursuing those theories regardless of how the Court decides nChain's *Daubert* motion.

*First*, Plaintiffs allege a "special" relationship[9] arising from the "Development Agreement," a fiduciary breach arising from a breach of that agreement, and purely economic loss. *See* Compl. ¶¶ 103-107. But under the economic loss doctrine, "a plaintiff may not recover in tort for purely economic damages arising from a breach of contract" unless "an independent [non-contractual] duty exists under the law." *Fla. Power & Light Co. v. Ga. Power Co.*, 2024 WL 1287025, at *12 (N.D. Ga. Mar. 26, 2024). Plaintiffs identify no such "independent" duty. Thus, nChain is entitled to summary judgment because the only relationship Plaintiffs allege is the purported Development Agreement, and for the reasons stated above there was no such agreement.

*Second*, even if Plaintiffs had asserted "special duties" outside of the alleged Development Agreement, there is no evidence of such duties. nChain was never a member of DistroMint, LLC, so it could not possibly owe Plaintiffs fiduciary duties on that ground. *See supra* § I.A.1. Nor does nChain owe any of the Plaintiffs fiduciary duties under O.C.G.A. § 23-2-58, which recognizes only two narrow categories of "special" relationships: (1) "where one party is so situated as to

---

[9] To the extent Plaintiffs allege a "special" relationship that falls short of a fiduciary one, it is not even clear what cause of action Plaintiffs are asserting. Even if Plaintiffs could establish a "confidential" relationship under the statute (they cannot), it does not follow that nChain owed fiduciary duties, because not every "confidential" relationship rises to a fiduciary relationship. King v. King, 316 Ga. 354, 357 (2023).

exercise a controlling influence over the will, conduct, and interest of another," or (2) "where, from a similar relationship of mutual confidence, the law requires the utmost good faith." *See King,* 316 Ga. at 357.

Business relationships are not generally confidential or fiduciary relationships; to the contrary, "there is no duty to represent or advance the other's interests." *Newitt v. First Union Nat. Bank*, 270 Ga. App. 538, 545–46 (2004). That is true even when the business relationship is "close and lengthy" (which the relationship at issue here was not). *See Automated Sols. Enters., Inc. v. Clearview Software, Inc.*, 255 Ga. App. 884, 887 (2002). There is no evidence that nChain had "controlling influence" over Plaintiffs; Finnerud negotiated against nChain and even declined the investment structure nChain proposed in December 2023. SMF ¶ 105; *see Newitt*, 270 Ga. App. at 546 (affirming summary judgment where there was no evidence that Defendant "exercised a controlling influence over [Plaintiff's] will, conduct, or interests" and "[Plaintiff] did not accept [Defendant's] offer because they did not [view it] as in their best interest"). Nor is there evidence that the parties' relationship was anything but an arm's-length business relationship. The Court should grant summary judgment on this claim.

## IV. Plaintiffs Cannot Prove Fraud (Count V)

Plaintiffs have refused to identify any alleged misrepresentations, *see* SMF

¶ 128.[10] This alone entitles nChain to summary judgment on the fraud claim. *See Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1325 (11th Cir. 2005) (affirming summary judgment where plaintiffs "have not identified any false representation."). In any case, Plaintiffs' fraud claim is just their contract claim in another guise; it asserts that nChain never intended to perform under the Development Agreement, Compl. ¶¶ 110, 114, but (even if that were true) "[a]ctionable fraud … does not result from a mere failure to perform promises made. Otherwise, any breach of a contract would amount to fraud." *ROYL Garage, LLC v. Mighty Oak Fin. LLC*, 2024 WL 1395154, at *2 (N.D. Ga. Mar. 31, 2024). As noted previously, the record shows that nChain and Finnerud negotiated concerning a potential agreement; the failure to reach agreement does not constitute fraud. Plaintiffs' fraud claim fails as a matter of law.

### V. Plaintiffs' Unjust Enrichment Claim Fails (Count VII)

The Complaint does not explain what benefit nChain supposedly received, *see* Compl. ¶¶ 120-122, and the record shows that nChain received none. Unjust enrichment requires "that (1) a benefit has been conferred, (2) compensation has not

[10] Plaintiffs claim for the first time in their second interrogatory responses that nChain made misleading statements by characterizing nChain's relationship with Plaintiffs as a "partnership" and by minimizing nChain's ownership interest in DistroMint. SMF ¶ 129. Plaintiffs do not allege these statements with any specificity as required by Fed. R. Civ. P. 9(b), nor do they show any detrimental reliance. Given these statements would have occurred well after they allege the Development Agreement was formed, it is unclear how they are relevant to this case.

been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." *Landcastle Acquisition Corp. v. First-Citizens Bank & Tr. Co.*, 2017 WL 2813674, at *3 (N.D. Ga. June 29, 2017). nChain paid Finnerud $175,000 in consulting fees and over $44,000 in expenses (which included four Google phones, one of which Finnerud gave to his wife). SMF ¶¶ 107–109. nChain also provided substantial human and financial resources to help Finnerud develop and launch the DistroMint platform. SMF ¶¶ 104, 111. nChain, by contrast, received nothing in return: the DistroMint platform never launched (and, consequently, never contributed to the growth of the BSV ecosystem), SMF ¶ 133, Finnerud's patent was denied due to lack of novelty, SMF ¶ 83, and nChain built no other products based on its work for Finnerud, SMF ¶ 114. The Court should grant summary judgment on Plaintiffs' unjust enrichment claim. *See Cargill Ltd. v. Jennings*, 308 F. App'x 385, 388 (11th Cir. 2009) (affirming summary judgment dismissal of unjust enrichment where the plaintiff provided no evidence of enrichment beyond his own "merely colorable assertion") (citation modified).

## VI. Plaintiffs Cannot Prove Conversion (Count VIII)

Plaintiffs' claim that nChain converted the DistroMint source code[11] (*see*

[11] To the extent Plaintiffs alleged conversion based on nChain "cutting off" Finnerud's access to the DistroMint platform, Finnerud has now conceded that he—not nChain—owned and controlled the AWS account that hosted the site. SMF ¶ 52. Finnerud lost access to the site because he failed to pay the AWS subscription fee. SMF ¶ 55.

Compl. ¶ 123) fails. *First*, the claim is preempted. Source code is an intangible that is not subject to conversion. Source code would at most be subject to claims under intellectual property statutes, which they have not done (and could not do). *See Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*, 2020 WL 12309512, at *4–6 (N.D. Ga. June 5, 2020) (federal patent law preempts conversion claims over a patent's subject matter; the Georgia Trade Secrets Act preempts a conversion claim based on misappropriation of trade secrets); *Fuss v. Bensch*, 601 F. Supp. 3d 1329, 1334 (N.D. Ga. 2022) (holding conversion claim regarding intellectual property subject to federal copyright protection is preempted).

*Second*, Plaintiffs lack a possessory interest in the source code. Plaintiffs do not own the code's copyright or any associated patents. SMF ¶¶ 50, 85. nChain's development team wrote the code, and Finnerud never had access to it. SMF ¶¶ 47–49. Plaintiffs cannot use a conversion claim to assert intellectual property rights that they do not own. Because Plaintiffs lacked a possessory interest in the code, the conversion claim fails. *See Purnell v. PepsiCo, Inc.*, 2023 WL 6219883, at *6 (M.D. Ga. Sept. 25, 2023) (granting summary judgment on a conversion claim where the plaintiff lacked possessory interest).

## VII. Alternatively, the Court Should Dismiss the Case for the Same Reasons Stated in nChain's Motion to Dismiss

nChain's Motion to Dismiss (Dkt. 19) cites ample reasons why Plaintiffs' Complaint is insufficiently pleaded as a matter of law. In its Order on that motion,

the Court noted that "nChain may raise its . . . substantive attacks on Plaintiffs' claims at summary judgment." Dkt. 60 at 15. Given the deficiencies in the Complaint, the Court should dismiss Plaintiffs' claims for the reasons stated in nChain's Motion to Dismiss.

## CONCLUSION

For the reasons stated herein, the Court should dismiss the action for lack of personal jurisdiction. In the alternative, the Court should grant summary judgment to nChain on each of Plaintiffs' remaining claims with prejudice.

This 30th day of September, 2026.

Respectfully submitted,

*/s/ Samantha R. Mandell*
Samantha R. Mandell
Georgia Bar No. 141689
STANTON LAW
410 Plasters Avenue NE, Suite 200
Atlanta, Georgia 30324
Tel. 404-881-1288
samantha.mandell@stantonlawllc.com

Rollo C. Baker IV (admitted *pro hac vice*)
Vivek Tata (admitted *pro hac vice*)
Jared Ruocco (admitted *pro hac vice*)
Sean Foley (admitted *pro hac vice*)
Elizabeth Baines (admitted *pro hac vice*)
ELSBERG BAKER & MARURI PLLC
Empire State Building
350 Fifth Avenue, 38th Floor
New York, New York 10118
Tel. 212-597-2600
rbaker@elsberglaw.com

vtata@elsberglaw.com
jruocco@elsberglaw.com
sfoley@elsberglaw.com
ebaines@elsberglaw.com

*Attorneys for Defendant nChain UK Ltd*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ERIC FINNERUD,<br>SOUND ALIVE ENTERPRISE, LLC, and<br>DISTROMINT, LLC,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>NCHAIN UK LTD,<br><br>*Defendant and Counterclaim-Plaintiff*. | Civil Action<br>File No.: 1:24-cv-05280-SDG |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 5.1 AND 7.1D**

I hereby certify that this Motion has been prepared in Times New Roman 14-point font and otherwise conforms with the requirements of this Court's Local Rules.

This 30th day of September, 2026.

/s/ *Samantha R. Mandell*
Samantha R. Mandell



WITHOUT PREJUDICE TO JURISDICTION