# Exhibit 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIC FINNERUD,<br>SOUND ALIVE ENTERPRISE, LLC, and<br>DISTROMINT, LLC,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>NCHAIN UK LTD,<br><br>*Defendant and Counterclaim-Plaintiff*. | ) | Civil Action<br>File No.: 1:24-cv-05280-SDG |

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF NCHAIN UK LTD'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST <u>REQUEST FOR ADMISSIONS TO DEFENDANT</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 36 and Local Rule 26.3 of the United States District Court for the Northern District of Georgia, Defendant nChain UK Ltd ("nChain UK"), by and through its undersigned counsel, hereby responds and objects to Plaintiffs' First Request for Admissions to Defendant (the "Requests," and each a "Request"), served on July 6, 2026, in the above-captioned action (the "Action") as follows:

***By responding and objecting to the Requests, nChain UK does not consent to the personal jurisdiction of the Court, does not seek to avail itself***

***of this forum and/or its laws, and expressly reserves, and does not waive, all jurisdictional objections and defenses.***

**RESPONSES AND OBJECTIONS TO SPECIFIC REQUESTS FOR ADMISSION**

1. Admit that you are nChain UK Ltd, a limited company incorporated in England and Wales with its principal place of business in the United Kingdom, engaged in providing blockchain technology solutions and consulting services.

**RESPONSE:**

nChain UK admits only that it is a limited company incorporated in England and Wales with its principal place of business in the United Kingdom, and that the nChain Group provides blockchain-related software development, IP licensing, and consulting services, but otherwise denies Request No. 1.

2. Admit that Plaintiff Eric Finnerud (professionally known as E. Smitty) is a resident of Lawrenceville, Georgia, and an American citizen who at all relevant times owned and operated Plaintiff Sound Alive Enterprise, LLC.

**RESPONSE:**

nChain UK objects to this Request because it seeks admission of facts within Plaintiffs' own knowledge and not independently verifiable by nChain UK. After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

3. Admit that Plaintiff Sound Alive Enterprise, LLC is a Georgia limited liability company with its principal office in Atlanta, Fulton County, Georgia.

**RESPONSE:**

nChain UK objects to this Request because it seeks admission of facts within Plaintiffs' own knowledge and not independently verifiable by nChain UK. After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

4. Admit that Christen Ager-Hanssen served as your CEO until his termination in or around October 2023.

**RESPONSE:**

nChain UK admits only that Christen Ager-Hanssen served as Group CEO of nChain Group from November 2022 until his termination in September 2023, but otherwise denied.

5. Admit that Christen Ager-Hanssen acted on your behalf in discussions and agreements with Plaintiffs regarding the DistroMint Project.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of unspecified "agreements" between nChain UK and Plaintiffs. Subject to the foregoing objection, nChain UK admits only that Christen Ager-Hanssen participated in discussions with Plaintiffs and otherwise denies Request No. 5.

6. Admit that in or around December 2022, you (through then-CEO Christen Ager-Hanssen) entered into an oral agreement with Eric Finnerud and Sound Alive Enterprise, LLC for the joint development and launch of the DistroMint blockchain-based music distribution platform.

**RESPONSE:**

Denied.

7. Admit that under the oral agreement, the parties expected and intended that you (nChain UK) and Eric Finnerud (E. Smitty) would be 50/50 owners of the DistroMint platform and related intellectual property and assets.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an "oral agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

8. Admit that the oral agreement constituted a joint venture or partnership-like arrangement in which the parties owed each other duties of good faith and fair dealing in the performance of their obligations arising from the shared ownership expectations, mutual contributions, and confidential nature of the DistroMint project.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an "oral agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

9. Admit that the oral agreement constituted a joint venture or partnership-like arrangement in which the parties owed each other fiduciary duties of loyalty, care, and full disclosure arising from the shared ownership expectations, mutual contributions, and confidential nature of the DistroMint project.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an "oral agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

10. Admit that in or around February 20, 2023, you (through then-CEO Christen Ager-Hanssen) entered into a written agreement via email with Eric Finnerud and Sound Alive Enterprise, LLC for the joint development and launch of the DistroMint blockchain-based music distribution platform.

**RESPONSE:**

Denied.

11. Admit that under the written agreement via email on February 20, 2023, the parties expected and intended that you (nChain UK) and Sound Alive Enterprise, LLC would be 50/50 owners of the DistroMint platform and related intellectual property and assets.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

12. Admit that Andrew Moody was included on the email correspondence of the written agreement on February 20, 2023 between Eric Finnerud and Christen Ager-Hanssen.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Subject to the foregoing objection, nChain UK admits only that Andrew Moody was copied on certain email correspondence involving Eric Finnerud and Christen Ager-Hanssen on February 20, 2023 and otherwise denies Request No. 12.

13. Admit that, from December 1, 2022 through February 20, 2023, Christen Ager-Hanssen was the CEO of nChain UK.

**RESPONSE:**

nChain UK admits only that Christen Ager-Hanssen was Group CEO of the nChain Group from December 1, 2022 through February 20, 2023 and otherwise denies Request No. 13.

14. Admit that, on February 20, 2023, Andrew Moody was the CFO of nChain UK.

**RESPONSE:**

nChain UK admits only that Andrew Moody was Group CFO of the nChain Group on February 20, 2023 and otherwise denies Request No. 14.

15. Admit that Andrew Moody did not take any action to repudiate the agreement entered into via email on February 20, 2023, between Christen Ager-Hanssen and Eric Finnerud.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an "agreement entered into via email" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

16. Admit that no nChain UK employee took any action to repudiate the agreement entered into via email on February 20, 2023, between Christen Ager-Hanssen and Eric Finnerud.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an "agreement entered into via email" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

17. Admit that the February 20, 2023, written agreement imposed on you the obligation to provide software and website development services, blockchain expertise and support, funding for Eric Finnerud's initial

consultancy services, patent assistance, and related add-on services, while Eric Finnerud would provide music industry expertise, artist and fan relationships, promotional efforts, brand development, and licensing of intellectual property (including Finnerud's provisional patent).

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

18. Admit that the February 20, 2023, written agreement was sufficiently definite in its essential terms to form a valid, binding, and enforceable contract under applicable law.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

19. Admit that the February 20, 2023, written agreement was sufficiently definite in its essential terms (parties, subject matter as the DistroMint platform, consideration via development-for-equity with 50/50 ownership expectations, and mutual performance obligations) to form a valid, binding, and enforceable contract under applicable law.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

20. Admit that Sound Alive Enterprise, LLC's substantial part performance under the February 20, 2023, written agreement (including development input, promotional activities, artist outreach, and patent work) was known to and accepted by you.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Subject to the foregoing objection, nChain UK admits only that it is aware that Eric Finnerud asserts he performed certain tasks on behalf of Sound Alive Enterprise, LLC in connection with the DistroMint project and otherwise denies Request No. 20.

21. Admit that from December 2022 through October 2023, Eric Finnerud performed substantial work in the United States on the DistroMint Project, including providing product development guidance, conducting promotional activities on social media and with music industry contacts, and advancing Eric Finnerud's provisional U.S. patent application No. 63/389,715

for "Blockchain Integration in Digital Music Distribution" (filed July 15, 2022).

**RESPONSE:**

nChain UK admits only that it is aware that Eric Finnerud asserts he performed certain tasks in connection with the DistroMint project and otherwise denies Request No. 21.

22. Admit that from December 2022 through October 2023, Sound Alive Enterprise, LLC performed substantial work in the United States on the DistroMint Project, including providing product development guidance, conducting promotional activities on social media and with music industry contacts, and advancing Eric Finnerud's provisional U.S. patent application No. 63/389,715 for "Blockchain Integration in Digital Music Distribution" (filed July 15, 2022).

**RESPONSE:**

nChain UK admits only that Eric Finnerud asserts he performed certain tasks on behalf of Sound Alive Enterprise, LLC in connection with the DistroMint project during the referenced period and otherwise denies Request No. 22.

23. Admit that you paid invoices for Eric Finnerud's consultancy services totaling approximately $112,500 and accepted and benefited from Plaintiffs' performance.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an agreement between nChain UK and Plaintiffs under which Plaintiffs "perform[ed]," which nChain UK denies. nChain UK admits only that it paid certain invoices from Sound Alive Enterprise, LLC for "Consulting & Business Development Services" and otherwise denies Request No. 23.

24. Admit that you provided a development team and resources to build the DistroMint platform under Eric Finnerud's guidance, with your internal time and costs for such development recorded at approximately $514,000 or more.

**RESPONSE:**

nChain UK admits only that Eric Finnerud was involved in communications concerning the DistroMint platform and design thereof, that nChain UK provided certain development resources for the DistroMint project, and that the labor costs associated with development of an unlaunched DistroMint platform totaled approximately $514,000. nChain UK otherwise denies Request No. 24.

25. Admit that following the termination of Christen Ager-Hanssen as CEO in October 2023, you ceased your performance under the February 20, 2023, written agreement by terminating Eric Finnerud's and Sound Alive Enterprise, LLC's access to the DistroMint development site, resources, repository, and assets.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

26. Admit that you failed to pay the remaining balance of Sound Alive Enterprise, LLC's consultancy.

**RESPONSE:**

nChain UK objects to this Request because it presupposes that nChain UK had an obligation to pay a "remaining balance" to Sound Alive Enterprise, LLC. Denied.

27. Admit that you refused to transfer or deliver the DistroMint source code, website, domain name(s), development repository, or other platform assets to Eric Finnerud after the termination of Christen Ager-Hanssen.

**RESPONSE:**

nChain UK objects to this Request because the phrase "other platform assets" is vague and ambiguous and because it presupposes that nChain UK had an obligation to transfer any assets to Eric Finnerud, which nChain UK denies. Subject to the foregoing objections, nChain UK admits only that it did not transfer any source code associated with the DistroMint platform to Eric Finnerud and otherwise denies Request No. 27.

28. Admit that you refused to transfer or deliver the DistroMint source code, website, domain name(s), development repository, or other platform assets to Sound Alive Enterprise, LLC after the termination of Christen Ager-Hanssen.

**RESPONSE:**

nChain UK objects to this Request because the phrase "other platform assets" is vague and ambiguous and because it presupposes that nChain UK had an obligation to transfer any assets used in connection with the DistroMint platform to Sound Alive Enterprise, LLC, which nChain UK denies. Subject to the foregoing objections, nChain UK admits only that it did not transfer any source code associated with the DistroMint platform to Sound Alive Enterprise, LLC and otherwise denies Request No. 28.

29. Admit that you refused to transfer or deliver the DistroMint source code, website, domain name(s), development repository, or other platform assets to DistroMint, LLC after the termination of Christen Ager-Hanssen.

**RESPONSE:**

nChain UK objects to this Request because the phrase "other platform assets" is vague and ambiguous and because it presupposes that nChain UK had an obligation to transfer any assets to DistroMint, LLC, which nChain UK denies. Subject to the foregoing objections, nChain UK admits only that it did not transfer any source code associated with the DistroMint platform to DistroMint, LLC and otherwise denies Request No. 29.

30. Admit that your conduct in ceasing performance, cutting off Eric Finnerud's and Sound Alive Enterprise, LLC's access, failing to pay the remaining consultancy fees, and retaining control of the DistroMint assets and intellectual property without the participation or full compensation of Eric Finnerud and Sound Alive Enterprise, LLC constituted a material breach of the February 20, 2023, written agreement.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

31. Admit that your material breach of the February 20, 2023, written agreement proximately caused Sound Alive Enterprise, LLC to suffer damages, including but not limited to the loss of its expected 50% ownership interest in the DistroMint platform and related assets, lost consulting fees, and other harm to their business, reputation, and economic interests.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

32. Admit that the February 20, 2023, written agreement included an implied covenant of good faith and fair dealing that required you to act honestly, fairly, and in a manner that did not deprive Plaintiffs of the fruits and benefits of the agreement.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

33. Admit that your conduct in cutting off Plaintiffs' access to the DistroMint development resources and assets, failing to pay the remaining consultancy fees, and retaining the platform and its value for your own benefit after accepting Sound Alive Enterprise, LLC's performance was not in good faith and fair dealing and breached the implied covenant.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an agreement between nChain UK and Plaintiffs under which Sound Alive Enterprise, LLC "perform[ed]," which nChain UK denies. Denied.

34. Admit that, as a result of the February 20, 2023, written agreement with shared ownership expectations and confidential contributions, you owed Plaintiffs fiduciary duties of loyalty, utmost good faith, and full

disclosure with respect to the DistroMint Project, its value, any plans to alter the ownership or commercialization, and any similar or competing projects.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, and the existence of fiduciary duties owed by nChain UK to Plaintiffs, which nChain UK denies. Denied.

35. Admit that your conduct in ceasing performance, cutting off access, retaining the assets, and pursuing similar commercialization through controlled affiliates without Plaintiffs' knowledge or participation breached any fiduciary duties owed to Plaintiffs.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of fiduciary duties owed by nChain UK to Plaintiffs, which nChain UK denies. Denied.

36. Admit that the document titled "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" was prepared and/or presented by or on your behalf, and accurately reflects communications and positions taken by you in early 2023.

**RESPONSE:**

nChain UK admits only that the Restructure Proposal was prepared on its behalf and otherwise denies Request No. 36.

37. Admit that the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" states that "nChain UK and E.Smitty are 50/50 owners of the Distromint platform (the Platform)" and that the Platform "was developed by an nChain development team under the guidance of E.Smitty" and based on Eric Finnerud's provisional U.S. patent application.

**RESPONSE:**

nChain UK admits only that the Restructure Proposal contains the quoted language and otherwise denies Request No. 37.

38. Admit that the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" states that you would "step back from holding an equity position," that Eric Finnerud would be "100% equity owner of the Project Company," and that you would provide convertible debt finance to the Project Company with an initial facility reflecting your investment to date of approximately USD $675,000 and a conversion valuation cap of USD $10,000,000.

**RESPONSE:**

nChain UK admits only that the Restructure Proposal contains the quoted language and otherwise denies Request No. 38.

39. Admit that the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" acknowledges Eric Finnerud's initial 12-month consultancy services at a fixed USD $150,000 (spread over 12 monthly payments) and your commitment to honor the full amount.

**RESPONSE:**

nChain UK admits only that the Restructure Proposal states in part that under the "Proposed Restructure," as to which Mr. Finnerud and nChain UK never reached an agreement, "nChain will honour its commitment to pay the full USD 150,000 (final three invoices totaling USD 37,500) for E.Smitty's initial consultancy services but will not extend the consultancy services arrangement." nChain UK otherwise denies Request No. 39.

40. Admit that the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" reflects your contemporaneous understanding that the DistroMint platform had substantial value and that Plaintiffs (through Eric Finnerud) had contributed meaningful performance, expertise, and intellectual property warranting significant ownership or compensation expectations.

**RESPONSE:**

Denied.

41. Admit that the $10,000,000 valuation cap in the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" was a self-interested floor proposed by you and does not represent the true fair market value of the DistroMint platform as of late 2023.

**RESPONSE:**

Denied.

42. Admit that in or around January 2026 an application or platform called Soundbase was launched or made available on or integrated with the HandCash wallet and items marketplace ecosystem.

**RESPONSE:**

After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

43. Admit that Soundbase allows artists to sell or distribute music, issue or trade music-related collectibles or items, and facilitate micropayments or other monetization in a manner that is conceptually and technically similar to the DistroMint platform.

**RESPONSE:**

After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

44. Admit that the domain soundbase.click was created on or about January 4, 2026, and that its registration or technical details connect to registrars, records, or infrastructure associated with nChain domains.

**RESPONSE:**

After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

45. Admit that the domain soundbase.click was created on or about January 4, 2026, and that its registration or technical details connect to registrars, records, or infrastructure associated with DistroMint domains.

**RESPONSE:**

After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

46. Admit that HandCash is a wallet and ecosystem controlled by or affiliated with you or your majority-owned/controlled entities, and that Soundbase operates within or in close conjunction with that ecosystem.

**RESPONSE:**

After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request as it relates to Soundbase. nChain UK admits only that HandCash is a digital wallet based on the Bitcoin SV blockchain and otherwise denies Request No. 46.

47. Admit that your internal documents, communications, or records reference, discuss, or relate to Soundbase or similar music distribution, NFT/collectible, or micropayment platforms developed or commercialized through nChain affiliates or controlled entities after Plaintiffs' access to DistroMint was terminated.

**RESPONSE:**

Denied.

48. Admit that your documented actions in developing, supporting, benefiting from, or commercializing Soundbase or similar platforms through controlled affiliates after terminating Plaintiffs' access to the DistroMint project are inconsistent with your litigation position that no enforceable agreement or joint venture existed with Plaintiffs.

**RESPONSE:**

nChain UK objects to this Request as presupposing that nChain UK developed, supported, benefited from, or commercialized Soundbase, which nChain UK denies. Denied.

49. Admit that your documented actions in developing, supporting, benefiting from, or commercializing Soundbase or similar platforms through controlled affiliates after terminating Plaintiffs' access to the DistroMint project are inconsistent with your litigation position that Plaintiffs have no ownership interest, rights, or claims with respect to the DistroMint platform, its concepts, or its value.

**RESPONSE:**

nChain UK objects to this Request as presupposing that nChain UK developed, supported, benefited from, or commercialized Soundbase, which nChain UK denies. Denied.

50. Admit that as of October 2, 2023, the fair market value of DistroMint on a going-concern basis was between $44,000,000 and $50,000,000.

**RESPONSE:**

nChain UK objects to the use of the term "DistroMint," which is vague and ambiguous because it fails to distinguish between the DistroMint platform and DistroMint, LLC. Denied.

51. Admit that the concluded fair market value of DistroMint as of October 2, 2023, substantially exceeds the $10,000,000 valuation cap proposed in the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL."

**RESPONSE:**

nChain UK objects to the use of the term "DistroMint," which is vague and ambiguous because it fails to distinguish between the DistroMint platform and DistroMint, LLC. Denied.

52. Admit that Sound Alive Enterprise, LLC's 50% ownership interest or equitable claim in DistroMint under the February 20, 2023, written agreement and part performance had a value of approximately $20 million or more as of October 2023.

**RESPONSE:**

nChain UK objects to the use of the term "DistroMint," which is vague and ambiguous because it fails to distinguish between the DistroMint platform and DistroMint, LLC. nChain UK further objects to this Request as

presupposing the existence of a "written agreement" between nChain UK and Plaintiffs concerning a division of interests in DistroMint LLC, which nChain UK denies. Denied.

53. Admit that as a direct and proximate result of your breaches, bad faith and fiduciary breaches, fraud, unjust enrichment, and conversion, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial but not less than the value of their lost ownership interest, lost fees, and consequential harm.

**RESPONSE:**

Denied.

54. Admit that you made material representations to Eric Finnerud that you would jointly develop and launch the DistroMint platform.

**RESPONSE:**

Denied.

55. Admit that you made material representations to Eric Finnerud that you would share ownership in the DistroMint platform on a 50/50 basis.

**RESPONSE:**

Denied.

56. Admit that you made material representations to Eric Finnerud that you would provide development resources for the benefit of the DistroMint platform.

**RESPONSE:**

Denied.

57. Admit that you made material representations to Eric Finnerud that you would provide funding for the benefit of the DistroMint platform.

**RESPONSE:**

Denied.

58. Admit that you made material representations to Eric Finnerud that you would jointly develop and launch the DistroMint platform and honor the arrangement between Sound Alive Enterprise, LLC and you in good faith.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an undefined "arrangement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

59. Admit that representations in Request Nos. 54-58 were false and that you made or maintained them with knowledge of their falsity or with reckless disregard for the truth.

**RESPONSE:**

nChain UK objects to this Request as presupposing that the alleged representations described in Request Nos. 54-58 were in fact made, which nChain UK denies. Denied.

60. Admit that Soundbase seeks similar commercialization goals as the DistroMint project.

**RESPONSE:**

After making a reasonable inquiry, nChain UK lacks knowledge or information sufficient to form a belief as to the truth of the Request and thus denies the same.

61. Admit that you made or maintained the representations in Request Nos. 54-58 with the intent to induce Plaintiffs to rely on them and to perform substantial work, share expertise and relationships, advance the patent and brand, and confer benefits on you.

**RESPONSE:**

nChain UK objects to this Request as presupposing that the alleged representations described in Request Nos. 54-58 were in fact made, which nChain UK denies. Denied.

62. Admit that Plaintiffs justifiably relied on your representations and conduct to their detriment by performing their obligations under the agreement and advancing the DistroMint project.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of an agreement between nChain UK and Plaintiffs, which nChain UK denies. nChain UK further objects to this Request as vague and ambiguous because the "representations" referenced are unspecified. nChain UK will assume for purposes of responding to this Request that the term "representations" refers to the alleged representations described in Request Nos. 54-58, which nChain UK denies. Denied.

63. Admit that you have been unjustly enriched by knowingly accepting, appreciating, and retaining the benefits of Eric Finnerud's and Sound Alive Enterprise, LLC's performance (including development progress, promotional value, intellectual property contributions, and the resulting platform and its commercial potential) under circumstances making

it inequitable for you to retain those benefits without paying Eric Finnerud and Sound Alive Enterprise, LLC the full value of their contributions or fulfilling the ownership and compensation expectations.

**RESPONSE:**

Denied.

64. Admit that Sound Alive Enterprise, LLC had a legal right to partial possession, ownership interest, or control of the DistroMint source code, platform assets, intellectual property, and related materials.

**RESPONSE:**

Denied.

65. Admit that Sound Alive Enterprise, LLC had an equitable right to partial possession, ownership interest, or control of the DistroMint source code, platform assets, intellectual property, and related materials.

**RESPONSE:**

Denied.

66. Admit that after October 2023, you wrongfully exercised dominion and control over the DistroMint source code, development resources, website, domain, and other assets, to the exclusion of Eric Finnerud and Sound Alive Enterprise, LLC and in a manner inconsistent with Eric

Finnerud's and Sound Alive Enterprise, LLC's rights or reasonable expectations under the February 20, 2023, written agreement.

**RESPONSE:**

nChain UK objects to this Request as presupposing the existence of a "written agreement" between nChain UK and Plaintiffs, which nChain UK denies. Denied.

67. Admit that your retention, use, or benefit from the DistroMint platform, source code, intellectual property, and concepts (including through Soundbase or affiliates) constitutes conversion of property or property rights in which Sound Alive Enterprise, LLC held an interest.

**RESPONSE:**

nChain UK objects to this Request as vague and ambiguous because it is not clear what property is being referenced with the terms "DistroMint Platform," "intellectual property," and "concepts," or whether there is a protectable interest in that unspecified property. nChain UK further objects to the phrase "including through Soundbase or affiliates" as presupposing that nChain UK has a relationship to Soundbase, which nChain UK denies. Denied.

68. Admit that you communicated to Eric Finnerud concerns about operating the platform from a U.S.-based company for jurisdictional and regulatory reasons.

**RESPONSE:**

nChain UK objects to this Request because the reference to "the platform" is ambiguous; for purposes of this response, nChain UK will assume that "the platform" is a reference to the DistroMint platform that was the subject of discussions between nChain UK and Eric Finnerud. Subject to that assumption, admitted.

69. Admit that from at least January 2023 onward, your in-house legal personnel (including Dale Evans) and external counsel devoted substantial attention to the DistroMint project, including terms and conditions, patent matters, commercial arrangements, and related legal workplan items, as reflected in the Privilege Log produced in discovery.

**RESPONSE:**

nChain UK admits only that certain in-house legal personnel, including Dale Evans, were involved in certain matters related to the DistroMint project from January 2023 through at least December 2023. nChain UK otherwise denies Request No. 69.

70. Admit that you considered your involvement in the DistroMint project to be a serious commercial arrangement with substantial value.

**RESPONSE:**

nChain UK admits only that its involvement in the DistroMint project was commercial in nature and otherwise denies Request No. 70.

71. Admit that your internal treatment of the DistroMint project as a serious commercial arrangement with substantial value is inconsistent with your litigation position denying the existence of an enforceable agreement or joint venture with Plaintiffs.

**RESPONSE:**

Denied.

72. Admit that the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" demonstrates that you viewed the DistroMint platform as having significant commercial potential and value at minimum to be a the $10 million cap proposed therein.

**RESPONSE:**

Denied.

73. Admit that the your internal documents demonstrate that you viewed the DistroMint platform as having significant commercial potential and value at minimum to be a $10 million cap.

**RESPONSE:**

Denied.

74. Admit that the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" demonstrates that you viewed the DistroMint platform as having significant commercial potential and value well in excess of the $10 million cap proposed therein.

**RESPONSE:**

Denied.

75. Admit that your internal documents demonstrate that you viewed the DistroMint platform as having significant commercial potential and value well in excess of the $10 million cap proposed in the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL."

**RESPONSE:**

Denied.

76. Admit that any denial by you of the existence of an enforceable oral agreement, your acceptance of Plaintiffs' performance, or the 50/50 ownership expectations is inconsistent with the plain language of the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" and the facts of your conduct in paying invoices, providing development resources, and internally treating the project as a legitimate joint venture.

**RESPONSE:**

Denied.

77. Admit the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL" is an authentic document created by you.

**RESPONSE:**

nChain UK objects that it is unclear which specific document is referenced in this Request. To the extent that this Request intends to refer to NCH0001868, nChain UK admits only that NCH0001868 is an authentic document created on nChain UK's behalf and otherwise denies Request No. 77.

78. Admit that you have no good faith basis to deny the authenticity of the "E.SMITTY / NCHAIN TRANSACTION RESTRUCTURE PROPOSAL," the fact that you paid certain consultancy invoices, the fact that you cut off Plaintiffs' access after October 2023, or the launch and similarity of Soundbase on the HandCash ecosystem in January 2026.

**RESPONSE:**

nChain UK admits only that document NCH0001868 is an authentic document created on nChain UK's behalf. nChain UK otherwise denies Request No. 78.

79. Admit Urban Bratina was a Project Manager for nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Urban Bratina was a Project Manager for nChain d.o.o. (d/b/a nChain Slovenia) in 2023 and otherwise denies Request No. 79.

80. Admit Stefan Matthews was employed by you in 2023.

**RESPONSE:**

nChain UK admits only that Stefan Matthews was a Director of nChain UK in 2023 and served as Joint Group CEO of nChain Group in 2023 from September through December. nChain UK otherwise denies Request No. 80.

81. Admit Dale Evans was an employed by you in the legal department in 2023.

**RESPONSE:**

nChain UK admits only that Dale Evans was employed by nChain UK as Senior Project Counsel from January through March of 2023 and then as Structuring & Execution Manager for the remainder of the year. nChain UK otherwise denies Request No. 81.

82. Admit that, in 2023, Dale Evans did not have additional roles in your company or the nChain group beyond his employment by you in your legal department.

**RESPONSE:**

Denied. Dale Evans also worked with the nChain Finance team on finance projects, which was reflected in the change of his title to Structuring & Execution Manager in March of 2023.

83. Admit James Marchant was the Deputy CEO for nChain group in 2023.

**RESPONSE:**

nChain UK admits only that James Marchant was employed by nChain UK from September 2023 as Chief Business Development Officer and then Chief Commercial Officer from November 2023. nChain UK otherwise denies Request No. 83.

84. Admit Christine Leong was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Christine Leong was employed by nChain UK as Chief Information Officer in 2023 and otherwise denies Request No. 84.

85. Admit Craig Wright was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Craig Wright was employed by nChain UK as Chief Science Officer in 2023 and otherwise denies Request No. 85.

86. Admit Simon Wood was employed by you in the finance department in 2023.

**RESPONSE:**

nChain UK admits only that Simon Wood was employed by nChain UK as Finance Director in 2023 and otherwise denies Request No. 86.

87. Admit Lars Jacob Bø was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Lars Jacob Bø was employed by nChain UK, including as Deputy CEO, from June 2023 to October 2023 and otherwise denies Request No. 87.

88. Admit Peter Coulson was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Peter Coulson was employed by nChain UK as Chief Operating Officer for September and October of 2023 and otherwise denies Request No. 88.

89. Admit Robert Alizon was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Robert Alizon was employed by nChain Licensing AG as Head of IP in 2023 and otherwise denies Request No. 89.

90. Admit David Brookes was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that David Brookes was employed by nChain UK as General Counsel from January to November of 2023 and otherwise denies Request No. 90.

91. Admit David Habot was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that David Habot was engaged by nChain d.o.o. (d/b/a nChain Slovenia) as Project Manager in 2023 and otherwise denies Request No. 91.

92. Admit Roman Puhek was the Head of the Slovenia office for nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Roman Puhek was employed by nChain d.o.o. (d/b/a nChain Slovenia) as Head of Special Operations - CEO of nChain Slovenia in 2023. nChain UK otherwise denies Request No. 92.

93. Admit D. Ragos was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Dragos Iordache was employed by nChain UK as Senior Associate in the Legal department from January to October of 2023 and otherwise denies Request No. 93.

94. Admit Thomas Mahon was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Thomas Mahon was an attorney at the law firm Page White Farrer Ltd in 2023 and that, in his capacity as external counsel, he provided certain legal services to nChain Group. nChain UK otherwise denies Request No. 94.

95. Admit Arthur Roberts was employed by you as IP Counsel in 2023.

**RESPONSE:**

nChain UK admits only that Arthur Roberts was employed by nChain UK as IP Counsel in 2023 and otherwise denies Request No. 95.

96. Admit Damier Rekic was employed by you or the nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Damier Rekic was engaged by nChain d.o.o. (d/b/a nChain Slovenia) as a Designer in 2023 and otherwise denies Request No. 96.

97. Admit Matevz Baskovc was a Technology Fellow for nChain group in 2023.

**RESPONSE:**

nChain UK admits only that Matevz Baskovc was engaged by nChain d.o.o. (d/b/a nChain Slovenia) as a Technology Fellow in 2023 and otherwise denies Request No. 97.

98. Admit that Tian Tian was employed by you as the Director of Marketing in 2023.

**RESPONSE:**

nChain UK admits only that Tian Tian was employed by nChain UK as the Director of Marketing in 2023 and otherwise denies Request No. 98.

This 10th day of August, 2026.

*/s/ Samantha R. Mandell*

Samantha R. Mandell
Georgia Bar No. 141689
STANTON LAW
410 Plasters Avenue NE, Suite 200
Atlanta, Georgia 30324
Tel. 404-881-1288
samantha.mandell@stantonlawllc.com

Rollo C. Baker IV*
Vivek Tata*
ELSBERG BAKER & MARURI PLLC
350 Fifth Avenue
New York, NY 10118
Tel. 212-597-2600
rbaker@elsberglaw.com
vtata@elsberglaw.com

* *pro hac vice*

*Counsel for Defendant and Counterclaim-Plaintiff nChain UK Ltd*