**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ERIC FINNERUD,
SOUND ALIVE ENTERPRISE, LLC, and
DISTROMINT, LLC,

*Plaintiffs and Counterclaim-Defendants*,

v.

NCHAIN UK LTD,

*Defendant and Counterclaim-Plaintiff*.

Civil Action
File No.: 1:24-cv-05280-SDG

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF NCHAIN UK LTD'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF <u>MICKEY A. FERRI, PH.D.</u>**

# TABLE OF CONTENTS


**Page**

**PRELIMINARY STATEMENT** .......... 1

**BACKGROUND** .......... 3

**LEGAL STANDARD** .......... 6

**ARGUMENT** .......... 6

I. DR. FERRI IS QUALIFIED TO REBUT HARAMINAC'S REPORT. .......... 6

A. Haraminac's Task Was to Value a Business Enterprise. .......... 7

B. Dr. Ferri Is Qualified in the Relevant Discipline—Business Valuation. .......... 8

C. Plaintiffs' Attacks on Dr. Ferri's Qualifications Have No Support. .......... 9

1. No Specific Valuation Credential Is Required for a Valuation Expert. .......... 10

2. Dr. Ferri's Rebuttal Applied Generally Accepted Valuation Methods. .......... 11

D. Plaintiffs Distort Dr. Ferri's Reaction to Haraminac's BSV Comments. .......... 13

II. PLAINTIFFS' CHALLENGES TO THE RELIABILITY OF DR. FERRI'S REPORT FAIL. .......... 14

A. Dr. Ferri Reviewed the Record. .......... 14

B. Dr. Ferri's 99% Adjustment to Haraminac's Income Approach Valuation Was Expressly "Illustrative," Not an Affirmative Valuation. .......... 17

C. Dr. Ferri's Use of Relevant Industry Data Was Appropriate. .......... 18

D. Dr. Ferri's Cost Approach Analysis Is Limited to Criticism of Haraminac's Analysis and Does Not Purport to Provide an Affirmative Valuation. .......... 20

1. Plaintiffs Mischaracterize Dr. Ferri's Treatment of the $675,000 Figure. ....................20

2. Dr. Ferri Does Not "Cherry-Pick" the Record. ....................22

3. Plaintiffs Mischaracterize Dr. Ferri's Assessment of BSV. ......22

III. PLAINTIFFS' HELPFULNESS CHALLENGES ALSO FAIL. ..................23

A. Dr. Ferri Does Not Opine as to nChain's Corporate Motive...............23

B. Dr. Ferri's Use of Market Data Is Permissible. ....................24

**CONCLUSION**....................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ....................16

*Auto Konnect, LLC v. BMW of N. Am., LLC*,
590 F. Supp. 3d 977 (E.D. Mich. 2022) ....................10, 11

*Bailey v. Allgas, Inc.*,
284 F.3d 1237 (11th Cir. 2002) ....................19

*Balthazar Mgmt., LLC v. Beale St. Blues Co.*,
2018 WL 6928698 (S.D. Fla. Oct. 30, 2018) ....................10

*Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*,
969 F. Supp. 2d 339 (S.D.N.Y. 2013) ....................21

*Berkley Ins. Co. v. Suffolk Constr. Co., Inc.*,
699 F. Supp. 3d 1341 (S.D. Fla. 2023) ....................11

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ....................22

*City of Tuscaloosa v. Harcros Chems., Inc.*,
158 F.3d 548 (11th Cir. 1998) ....................19

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....................6

*DePaepe v. Gen. Motors Corp.*,
141 F.3d 715 (7th Cir. 1998) ....................24

*DISH Network L.L.C. v. Fraifer*,
184 F.4th 1309 (11th Cir. 2026) ....................16

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
104 F. Supp. 3d 441 (S.D.N.Y. 2015) ....................19

*Faulkner v. Arista Recs. LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014) ....................9

*FNB Bank v. Park Nat. Corp.*,
996 F. Supp. 2d 1187 (S.D. Ala. 2014) ....................24

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ....................18

*Griffin v. Coffee Cnty.*,
608 F. Supp. 3d 1363 (S.D. Ga. 2022) ....................11

*Guinn v. AstraZeneca Pharms. LP*,
602 F.3d 1245 (11th Cir. 2010) ....................19

*In re ATIF, Inc.*,
160 F.4th 1124 (11th Cir. 2025) ....................6

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ....................18

*In re Pfizer Inc. Sec. Litig.*,
819 F.3d 642 (2d Cir. 2016) ....................21

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................24

*Lippe v. Bairnco Corp.*,
99 F. App'x 274 (2d Cir. 2004) ....................18

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007) .................... 18, 19

*McSwain v. World Fuel Servs. Corp.*,
546 F. Supp. 3d 1144 (S.D. Fla. 2021) ....................15

*MidAmerica C2L Inc.v. Siemens Energy, Inc.*,
2023 WL 2733512 (11th Cir. Mar. 31, 2023) ....................11, 18, 19

*Navelski v. Int'l Paper Co.*,
244 F. Supp. 3d 1275 (N.D. Fla. 2017) ....................6, 11

*Pledger v. Reliance Tr. Co.*,
2020 WL 6101409 (N.D. Ga. Jan. 24, 2020) ....................24

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
49 F. Supp. 3d 385 (S.D.N.Y. 2014) ....................20

*SEC v. Lek Sec. Corp.*,
370 F. Supp. 3d 384 (S.D.N.Y. 2019) ....................8

*SEC v. Spartan Sec. Grp.*,
164 F.4th 1231 (11th Cir. 2026) ....................10

*SEC v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013) ....................8

*Taylor v. Evans*,
1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ....................24

*United States v. Mejia*,
545 F.3d 179 (2d Cir. 2008) ....................25

**Rules**

Fed. R. Evid. 702 ....................6

Fed. R. Evid. 703 .................... 16, 25

## PRELIMINARY STATEMENT

nChain's expert, Dr. Mickey Ferri, rebutted the valuation report of Dorothy Haraminac by showing her $44 million valuation of DistroMint—a platform that never launched, signed a customer, or earned a dollar of revenue—was based on a series of baseless assumptions. Dr. Ferri's rebuttal report exposes the numerous deficiencies that render Haraminac's report unreliable, including her failure to identify what she purports to value (the DistroMint software platform, the company DistroMint, LLC, or some combination); her unsupported assumption that the DistroMint platform would launch and achieve lasting commercial success; her failure to account for the probability of failure; and her baseless inputs for which she cites no support in the record. Rather than take Dr. Ferri's critiques head-on, Plaintiffs attempt to reframe Haraminac's report to claim that Dr. Ferri is unfit to critique her analysis, and then they go on to mischaracterize several parts of his report. Their arguments provide no basis for excluding any portion of Dr. Ferri's rebuttal report; on the contrary, they underscore why *Haraminac* should be excluded.

Plaintiffs' attack on Dr. Ferri's qualifications rests on a false premise. They claim that Haraminac's task was "to value a pre-revenue, blockchain-based NFT music marketplace," and that Dr. Ferri is not qualified to perform a rebuttal analysis on that subject because he is not an expert in "blockchain companies." But Haraminac's task was a standard business valuation that, by her own account,

required the application of standard valuation methods, not a bespoke exercise demanding some specialized expertise in blockchain. Haraminac even testified that she and Dr. Ferri applied the same standard valuation methodology.

It is Haraminac, not Dr. Ferri, who is not qualified to perform a business valuation. In contrast to Dr. Ferri's extensive experience in business valuation, Haraminac's background is in financial forensics and cryptocurrency. And unlike Dr. Ferri, she has never been retained to offer expert testimony on business valuation.

Plaintiffs' challenges to the reliability and helpfulness of Dr. Ferri's report fare no better. For example, Plaintiffs argue Dr. Ferri did not adequately review the record (he did) by making several points that apply more to Haraminac. They offer no reason to apply different standards to Dr. Ferri, and their diligence argument cuts against Haraminac: she spent only 25 hours on her report and supposedly considered over 13,000 documents in just three days before submitting the report. Her report is not the product of diligence, and Dr. Ferri exposed the resulting deficiencies.

Plaintiffs notably "do not move against Dr. Ferri's criticisms of Ms. Haraminac's inputs, comparable companies, multiples, discount rate, marketability discount, or weighting, nor against his quantifications of figures drawn from her own report." Br. 25. These are the issues at the core of his rebuttal; that Plaintiffs do not challenge his analysis on these points is an indictment of Haraminac's report.

This Court should deny the Motion.

## BACKGROUND[1]

Plaintiff Eric Finnerud wanted to build a digital platform for distributing music and creating blockchain-based non-fungible tokens ("NFTs"). Dkt. 115 at 3. In late 2022, Finnerud, who does not code and lacked funding to build the platform, approached the nChain Group, which specializes in the Bitcoin SV ("BSV") blockchain. *See id.* From January to September 2023, nChain built the "DistroMint" platform through a Slovenia-based affiliate. *Id.* at 3–4. In February 2023, Finnerud founded DistroMint, LLC as a prospective project company. *Id.* at 4.

In September 2023, nChain ceased work on the platform. *Id.* at 4. At the time, the platform was merely a "minimum viable product"[2]: a marketplace for music-related NFTs, built on the BSV blockchain, with a "music distribution" function that was limited to a portal where artists could upload content for manual review. *Id.* The platform never launched, never had customers, and never generated revenue. *Id.*

***Plaintiffs' Expert.*** Plaintiffs' expert, Dorothy Haraminac, who claims expertise in cryptocurrency and has never offered testimony as a business valuation expert, values DistroMint at a staggering $44,452,361 as of October 2, 2023. Dkt. 115 at 20–22. Haraminac's report is riddled with unsupported assumptions,

[1] nChain incorporates by reference the more detailed background in its Motion to Exclude the Expert Report and Testimony of Dorothy Haraminac (Dkt. 115).

[2] A minimum viable product is a term used to describe the most basic version of a product that allows users to test features and provide feedback for the developers.

ambiguities, and other deficiencies. *See generally id.* She purports to value "the DistroMint enterprise as a whole," Dkt. 115-2 at 16, but never explains exactly what that means. She builds her valuation on a baseline assumption of commercial success: she states that "***[t]he going-concern premise rests on the directed presumption*** that commercialization would have proceeded," and that the value "is developed ***presuming that commercialization would have proceeded*** but for the events at issue, which is a presumption directed for the analysis." *Id.* at 10–11, 17.

Having first assumed success, Haraminac then misapplies three valuation methods (the income, market, and cost approaches) that yield a wildly divergent range of values. *Id.* at 3. That wide divergence is itself a demonstration that her opinion is unreliable, but she then compounds the problem by putting a thumb on the scales, assigning the greatest weight to the valuation approach with the highest value to reach an approximately $44 million valuation. *Id.* at 3, 21.

***nChain's Rebuttal Expert.*** nChain retained Dr. Ferri to serve as a rebuttal witness to Haraminac. He opines that Haraminac's report is "flawed, speculative, and unreliable for multiple reasons," including that Haraminac:

- "Fails to distinguish between the proposed DistroMint platform and DistroMint, LLC," resulting in an "ambiguous" valuation;
- "Improperly assumes DistroMint would become a viable and operating platform with certainty, rather than analyzing the viability of the proposed platform and whether it could actually be developed and launched";
- "Improperly assumes DistroMint would achieve its revenue and profit

projections with certainty," without ever "adjust[ing] for the probability of failure"; and

- Uses speculative, arbitrary, and unsupported assumptions and inputs.

Dkt. 115-5 ¶ 16. Contrary to Haraminac's foundational assumption of success, Dr. Ferri opines that "DistroMint's probability of generating any meaningful revenues and profits was very low as of October 2, 2023." *Id.* ¶ 12.

Dr. Ferri does not offer an affirmative valuation of DistroMint; instead, he focuses on the flaws in Haraminac's analysis. As to the income and market approaches, Dr. Ferri opines that "[t]here is not a sufficient basis to establish a reliable valuation of DistroMint or DistroMint, LLC as of October 2, 2023, or at any time." *Id.* ¶¶ 13–14. And contrary to Haraminac's treatment of nChain's reported DistroMint-related costs of $675,000 as "a floor" under the cost approach, Dkt. 115–2 at 16, Dr. Ferri opines that that figure "could be used as the starting point for a valuation" and "would at most represent an upper bound." Dkt. 115–5 ¶ 15.

Plaintiffs do not contest Dr. Ferri's conclusions that there is no sufficient basis for a reliable valuation under the income or market approach. And they disclaim any challenge to (i) his "criticisms of Ms. Haraminac's inputs, comparable companies, multiples, discount rate, marketability discount, or weighting," and (ii) "his quantifications of figures drawn from her own report." Br. 25. Plaintiffs challenge only Dr. Ferri's qualifications and a few discrete parts of his report. *Id.* at 1–4.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, expert testimony is admissible so long as "(1) the expert is sufficiently qualified to testify on the relevant subject matter; (2) the expert's methodology is reliable according to the standards articulated in *Daubert*; and (3) the expert's testimony will be helpful to the factfinder in understanding the pertinent issues at trial." *In re ATIF, Inc.*, 160 F.4th 1124, 1138 (11th Cir. 2025) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–94 (1993)); *see* Fed. R. Evid. 702. Although any expert must satisfy *Daubert*, "[t]he task of a rebuttal expert is different from that of an affirmative expert" because a rebuttal expert need not "offer a competing … analysis," and his opinions "may be limited to criticizing the analysis and conclusions presented by another party." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1302 (N.D. Fla. 2017).

## ARGUMENT

Plaintiffs argue that Dr. Ferri is not qualified to rebut Haraminac's report, and that certain portions of his report are unreliable or would not assist the jury. As set forth below, these arguments are meritless. This Court should deny the Motion.

### I. DR. FERRI IS QUALIFIED TO REBUT HARAMINAC'S REPORT.

Plaintiffs argue Dr. Ferri is not qualified to value a "pre-revenue, blockchain-based NFT music marketplace." Br. 8–13. That is a red herring. Haraminac purported to conduct a standard business valuation; Dr. Ferri is more than qualified to serve as an expert in business valuation, and that is the role he performed in

rebutting Haraminac's opinion. Plaintiffs' objections provide no basis for disqualifying Dr. Ferri, and, if anything, support excluding Haraminac.

**A. Haraminac's Task Was to Value a Business Enterprise.**

Plaintiffs' "blockchain company" framing is a litigation construct. They never define that term, and it does not change the valuation analysis. DistroMint was a pre-revenue platform.[3] The fact that DistroMint would have involved a blockchain does not change the method of valuing the enterprise. Plaintiffs do not argue otherwise: they never explain why a blockchain component in a company's product would change the valuation methodology or require the valuator to have blockchain expertise. A software company is valued as a business irrespective of what its software does, even when blockchain technology is involved. Haraminac confirmed as much, testifying that "the traditional [valuation] methods are applicable in instances where blockchain components are at issue." Dkt. 115-4 at 454:20–22.

Haraminac's report is consistent with that testimony. She uses three standard business valuation methodologies—the income, market, and cost approaches. Dkt. 115-2 at 17. Her report states that these approaches "apply to enterprises with blockchain components ***without modification to the methods themselves***; what changes is the quality of the inputs." *Id.* And she testified that she and Dr. Ferri

[3] Haraminac simply assumes that DistroMint, LLC is the entity that would have operated the DistroMint platform. *See* Dkt. 115-2 at 3 n.1.

"us[ed] the same methods" and simply "disagree[d] about the inputs." Dkt. 115-4 at 456:4–9. Thus, Plaintiffs' attempt to recharacterize the relevant task as a unique form of valuation requiring some specialized expertise is not supported by the valuation analysis their own expert purported to perform.[4]

**B. Dr. Ferri Is Qualified in the Relevant Discipline—Business Valuation.**

Dr. Ferri is qualified to serve as a business valuation expert. He earned a Ph.D. in economics from the University of Chicago, specializes in applied business economics, and, over more than a decade of working in the field, has had extensive experience consulting on matters that include valuation. Dkt. 115-5 ¶¶ 2–3 & Ex. 1. He has served as an expert or consultant in dozens of arbitrations and cases in federal and state courts, including on business, asset, and lost profit valuation, and he has testified at trial and arbitration hearings, including regarding valuation. *See id.*, Ex. 1. He also has valuation experience involving companies with pre-revenue software products. *Id.* And he co-founded and served as Chief Growth Officer of a startup company that received outside funding. *Id.* Dr. Ferri's education, knowledge, and experience plainly qualify him to rebut Haraminac's business valuation.[5]

---

[4] Plaintiffs never explain why Dr. Ferri's analysis "depend[s] on" expertise in blockchain technology, Br. 11; nor could they.

[5] Plaintiffs' authorities (Br. 11) are entirely inapposite. Unlike *SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 407–08 (S.D.N.Y. 2019), Dr. Ferri is relying on his extensive business valuation experience, not "general expertise." *SEC v. Tourre*, 950 F. Supp.

Plaintiffs' arguments show that *Haraminac* is not qualified. As Plaintiffs note, a witness's expertise must match "the subject matter of the witness's testimony." Br. 9 (quoting *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 375 (S.D.N.Y. 2014)). Haraminac's expertise does not fit her mandate to provide a business valuation. She describes herself as a "financial forensics expert with expertise in cryptocurrency tracing and valuation," and she holds certifications in those fields. Dkt. 115-2 at 22. Her work involves analyzing the movement and value of digital assets, and assessing blockchain-based services "where there are no people and there are no corporate structures." Dkt. 115-3 at 62:8–65:14. But she purports to value an enterprise that has a traditional structure and is managed by people. Business valuation is a distinct discipline with its own standards and methods, and it is a field in which Haraminac has never offered expert testimony. *See* Dkt. 115 at 22. Haraminac has been excluded before because her cryptocurrency expertise did not match the relevant subject and thus "would not assist" the factfinder. *Id.* at 23. That is true here also.

**C. Plaintiffs' Attacks on Dr. Ferri's Qualifications Have No Support.**

Plaintiffs also argue Dr. Ferri is not qualified because he (i) lacks "valuation credentials," and (ii) does not purport to use a specific organization's valuation standard. Br. 9–10. Both arguments are meritless.

---

2d 666, 677–78 (S.D.N.Y. 2013), is even further afield; there, the purported expert had no "education, expertise, or experience" on the issues on which he was to testify.

1. <u>No Specific Valuation Credential Is Required for a Valuation Expert.</u>

A valuation expert need not have a specific valuation credential such as a certification from or membership in an industry association. An expert "may be qualified in various ways, including by knowledge, skill, training, or experience." *SEC v. Spartan Sec. Grp.*, 164 F.4th 1231, 1251 (11th Cir. 2026) (cleaned up). Courts have rejected the idea that a proffered business valuation expert is not qualified unless he has a valuation certification or belongs to a business valuation organization. *See, e.g.*, *Balthazar Mgmt., LLC v. Beale St. Blues Co.*, 2018 WL 6928698, at *3–4 (S.D. Fla. Oct. 30, 2018) (holding that a rebuttal expert who had no certification in business valuation was qualified to serve as an expert in business valuation based on his knowledge, education, and experience); *Auto Konnect, LLC v. BMW of N. Am., LLC*, 590 F. Supp. 3d 977, 986 (E.D. Mich. 2022) ("Defendant's claim [the expert] does not qualify because he is not a CPA, a certified business valuation analyst or member of a nationally accredited professional valuation guild is without merit."). Notably, although Haraminac touts a membership in a valuation organization ("NACVA"), she does *not* claim to hold that organization's credential as a Certified Valuation Analyst. Her only NACVA credential is in a different discipline—financial forensics.[6] Dkt. 115-2 (Dkt. p. 217).

---

[6] *See* "Certified Valuation Analyst (CVA)," NACVA, https://www.nacva.com/cva (last accessed Oct. 16, 2026).

Plaintiffs' authorities (Br. 10–11) offer them no support. In *MidAmerica C2L Inc. v. Siemens Energy, Inc.*, the district court held that the proffered expert was unqualified to testify on the value of certain equipment because he had "never conducted an appraisal analysis." 2023 WL 2733512, at *5 (11th Cir. Mar. 31, 2023). The Eleventh Circuit affirmed, stating that, setting aside the qualifications question, the expert failed to point to "any verifiable methodology" to support his opinions. *Id.* at *9–10. In contrast, Dr. Ferri has significant experience in the relevant task—conducting business valuations—and he used generally accepted valuation methods, *see infra* § I.C.2. Plaintiffs' reliance on *Berkley Ins. Co. v. Suffolk Constr. Co., Inc.*, 699 F. Supp. 3d 1341, 1354–55 (S.D. Fla. 2023), and *Griffin v. Coffee Cnty.*, 608 F. Supp. 3d 1363, 1370 (S.D. Ga. 2022), also fails because, unlike Dr. Ferri, the experts in those cases lacked experience and training in the relevant subjects.

2. <u>Dr. Ferri's Rebuttal Applied Generally Accepted Valuation Methods.</u>

Plaintiffs' suggestion (Br. 9) that Dr. Ferri should have applied any organization's valuation standard is baseless, and courts have rejected it. *See, e.g.*, *Auto Konnect*, 590 F. Supp. 3d at 987 (rejecting argument that a valuation opinion was "not based on any professional standard" where, like here, the expert used a generally accepted methodology and "cite[d] to a relevant treatise supporting his use of this methodology"). The relevant question is whether the expert applied generally accepted methods for the task at issue. *See id.*; *Navelski*, 244 F. Supp. 3d at 1286.

Dr. Ferri applied generally accepted valuation methods. He used the fair market value standard, the most common business valuation standard, and the same one Haraminac purportedly applied. Dkt. 115-5 ¶ 23; Dkt. 115-2 at 16 ("The standard of value is fair market value, the price at which the platform would change hands between a hypothetical willing buyer and willing seller, neither compelled and both reasonably informed."). Further, Dr. Ferri correctly applied the same standard valuation approaches that Haraminac purported to—the cost, market, and income approaches. Dkt. 115-5 ¶¶ 35–47; Dkt. 115-2 at 17. Dr. Ferri testified that he applied those methodologies consistently with the academic literature and industry guidance that he cites in his report. Dkt. 112-1 at 46:15–19. Plaintiffs do not argue otherwise.

Nor could they. Haraminac stated that she and Dr. Ferri are "using the same methods," and that any disagreements are "about the inputs," not the "underlying methodology." Dkt. 115-4 at 456:4–9. Further, she testified that the principal sources that Dr. Ferri cites—works by Shannon Pratt and Aswath Damodaran, *e.g.*, Dkt. 115-5 ¶ 57 n.59, ¶ 53 n.53—offer generally accepted valuation guidance, stating that "Pratt and Damodaran and others are a guid[e] … for how to apply" the traditional valuation methods. Dkt. 115-4 at 455:6–9. Haraminac's testimony thus refutes Plaintiffs' argument that Dr. Ferri did not use an appropriate methodology.[7]

[7] Plaintiffs fault Dr. Ferri for being unfamiliar with certain cryptocurrency work by Damodaran, and for not using Damodaran's most recent textbook edition, Br. 13, but

Haraminac is right that she and Dr. Ferri agree on the basic methodology but disagree on the inputs. Their disagreement on inputs is fundamental: the standard valuation methods are only as good as their inputs, and because Haraminac's inputs are based on a series of unsupported assumptions, her valuations under each method are unreliable. *See* Dkt. 115. That is the crux of Dr. Ferri's rebuttal opinion, and Plaintiffs have no answer to it. Indeed, Plaintiffs expressly "do not move against Dr. Ferri's criticisms of Ms. Haraminac's inputs." Br. 25.

**D. Plaintiffs Distort Dr. Ferri's Reaction to Haraminac's BSV Comments.**

Plaintiffs also argue that Dr. Ferri improperly opined that BSV constituted "uncertain technology" despite lacking expertise in blockchain technology. Br. 12. Plaintiffs mischaracterize Dr. Ferri's statement: his reference to certain risks that DistroMint faced because it "relied on uncertain technologies," including the BSV blockchain, is a point *in rebuttal*, addressing something that *Haraminac* stated: that the decline of BSV was a risk factor for DistroMint. *See* Dkt. 115-5 § IV.E, ¶ 64; Dkt. 115-2 at 17 ("[T]he impairment of Bitcoin SV is priced as a risk visible on the valuation date"). It is not an affirmative opinion on the *technological* state of BSV.

Dr. Ferri's reference to BSV as a "technolog[y]" is merely a classification; he does not opine on any technological issue. Instead, he discusses *Haraminac*'s point

---

these points have no bearing on Dr. Ferri's qualifications. Nor do Plaintiffs argue that Dr. Ferri's analysis would have changed had he consulted those sources.

about the *commercial* challenges that BSV faced, including delisting from several cryptocurrency exchanges and a decline in daily trading volume. Dkt. 115-5 ¶¶ 63–65. Those commercial challenges lead him to agree with Haraminac's conclusion that BSV had an uncertain future. *Id.* ¶¶ 64–65; *see* Dkt. 115-2 at 17.

And Dr. Ferri reacts to Haraminac's observation for good reason. As he explains, Haraminac erred based on her own premise that BSV was declining: the impairment to BSV would make DistroMint worth less, not more. Dr. Ferri states that the portion of the DistroMint platform's development costs "that was directed toward BSV … would have lost significant value due to the challenges faced by BSV." Dkt. 115-5 ¶ 74. At no point does he purport to provide an evaluation of any technical component of BSV. Nor do Plaintiffs point to any such opinion.

## II. PLAINTIFFS' CHALLENGES TO THE RELIABILITY OF DR. FERRI'S REPORT FAIL.

Plaintiffs also contest the reliability of Dr. Ferri's report, arguing that he failed to review the record, and that he improperly (i) applies an illustrative adjustment to Haraminac's income approach valuation, (ii) uses business data that is not specific to DistroMint, and (iii) adopts nChain's $675,000 in costs on the DistroMint project as an "upper bound" under the cost approach. *See* Br. 14–21. These arguments fail.

### A. Dr. Ferri Reviewed the Record.

Plaintiffs argue that "Dr. Ferri formed his opinions without reviewing the record bearing on them," specifically contending that his report does not account for

the deposition testimony of the fact witnesses, that he did not personally review all of the documents he cited, and that he never visited the DistroMint development site. *Id.* at 21. This argument fails on its own terms, but it is also an obvious attempt to distract from *Haraminac's* lack of diligence. Haraminac relied on a "directed" presumption as the foundation of her report and spent only 25 hours producing it. Dkt. 115-2 at 17; Dkt. 115-3 at 23:16–24:9. She received the entire record of this case (more than 13,000 documents) from Plaintiffs' counsel only ***three days*** before she submitted her report, and she claims that she and her team reviewed all those files during that short period. Dkt. 115-3 at 95:22–108:1; Dkt. 115-2, App'x A (listing "Documents Reviewed"; *see* "Date Obtained"). She spent only one weekend reviewing thousands of documents, forming her opinions, and drafting her report. Plaintiffs' argument requires exclusion of Haraminac's opinion, not Dr. Ferri's.

***Deposition Testimony.*** Like Haraminac's report, Dr. Ferri's does not cite deposition testimony because all fact depositions occurred after both reports were due; Dr. Ferri testified that he reviewed Dale Evans's transcripts and had no reason to modify his report. Dkt. 112-1 at 8:6–10. Even if Dr. Ferri had not reviewed those transcripts, that would be no reason to exclude his report. *See McSwain v. World Fuel Servs. Corp.*, 546 F. Supp. 3d 1144, 1148, 1151 (S.D. Fla. 2021) (rejecting reliability challenge where the expert allegedly "did not consider the deposition testimony"). Haraminac also did not modify her report after the fact depositions, but

Plaintiffs offer no reason why only Dr. Ferri's report is unreliable on this basis.

***Document Review.*** Dr. Ferri testified that a member of his team "working under [his] direction would have reviewed" all documents considered for his report and informed him of their contents. Dkt. 112-1 at 48:23–25. That is typical and accepted practice. "An expert may base an opinion on facts or data in the case that the expert has *been made aware of* or personally observed." Fed. R. Evid. 703 (emphasis added); *see also DISH Network L.L.C. v. Fraifer*, 184 F.4th 1309, 1323 (11th Cir. 2026) (rejecting argument that reliance on "fact gathering work" supervised by expert was improper). Indeed, Haraminac employed "analysts" (and used digital tools) to purportedly review the thousands of documents that she claims to have considered for her report. *See* Dkt. 115-3 at 98:17–104:3.

***Development Website.*** Dr. Ferri testified that reviewing the DistroMint development website was not an important consideration for his rebuttal analysis.[8] Dkt. 112-1 at 136:16–24. Plaintiffs offer no reason to dispute that position. Neither Haraminac nor Dr. Ferri are technical experts or are providing expert testimony on the business operations of a potential DistroMint site. Moreover, beyond acknowledging that the website was merely a "minimum viable product still under

[8] For this reason, Plaintiffs' reliance (Br. 22) on *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002), is entirely inapposite. There, the expert did not address variables he conceded were part of a "proper" analysis.

active development, with active integration and payment components incomplete as of the valuation date," Dkt. 115-2 at 10, Haraminac does not rely on the website for any conclusions or state that the website impacted her analysis in any way. Plaintiffs' conclusory argument that the website was evidence "directly bearing" on Dr. Ferri's analysis contradicts their own expert and should be rejected.

**B. Dr. Ferri's 99% Adjustment to Haraminac's Income Approach Valuation Was Expressly "Illustrative," Not an Affirmative Valuation.**

Plaintiffs mischaracterize Dr. Ferri's "illustrative adjustment factor of 99 percent" to Haraminac's $55,557,335 valuation as an unreliable opinion. Br. 14–16. But as Plaintiffs themselves acknowledge, that adjustment is merely "***illustrative***" (*id.*): its purpose is to critique Haraminac's "assum[ption] that DistroMint would meet the revenue projections in [her] report with certainty" without ever accounting for "the extremely low probability of success for the proposed DistroMint platform," Dkt. 115-5 ¶¶ 93–94. As Dr. Ferri explains, only about 1.3% of all U.S. businesses achieve $10 million or more in annual revenue, and DistroMint's probability of generating meaningful revenue "was very low as of October 2, 2023." *Id.* ¶¶ 12, 92, 101. The 99% adjustment simply illustrates how dramatically Haraminac's valuation changes once the analysis accounts for downside risks. The resulting $555,573 figure is not an opinion on DistroMint's value, and Dr. Ferri does not treat it as such. Plaintiffs' cases (Br. 15–16) are thus inapposite because, among other

differences, in each an expert offered an affirmative opinion without a reliable basis.[9]

**C. Dr. Ferri's Use of Relevant Industry Data Was Appropriate.**

Plaintiffs argue that Dr. Ferri's use of data regarding business survival and failure rates from the Bureau of Labor Statistics ("BLS") is unreliable because it covers a broad range of companies, not only "blockchain companies" (which Plaintiffs do not define), and therefore does not "fit" DistroMint. Br. 16. Again, Plaintiffs mischaracterize Dr. Ferri's report. Dr. Ferri provides the BLS data to show that business failure is commonplace. Dkt. 115-5 ¶ 31. He uses this data not to suggest that DistroMint *would* fail within five years but rather to criticize Haraminac for not accounting "for the high probability that DistroMint would not be commercialized and ***survive for at least five years*** and indefinitely into the future." *Id.* ¶¶ 120–21 (referring back to BLS data showing that "the majority of companies across all industries do not survive beyond five years"). Dr. Ferri's report acknowledges that the data is illustrative of businesses generally. *Id.* ¶ 31. That is

[9] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143–47 (1997) (expert relied on studies that did not support his contention in toxic tort case); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 430–32 (S.D.N.Y. 2016) (expert "drew impermissibly speculative conclusions" from studies in product liability case); *MidAmerica*, 2023 WL 2733512, at *7–10 (excluding testimony on product design defects because the expert "did not run any analysis on the equipment at issue"); *Lippe v. Bairnco Corp.*, 99 F. App'x 274, 278–79 (2d Cir. 2004) (valuation experts made unexplained and implausible assumptions); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 568–70 (S.D.N.Y. 2007) (expert failed to explain why his two studies yielded inconsistent results on the same issue in a trademark case).

perfectly permissible.[10] *Cf., e.g.*, *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 528 (S.D.N.Y. 2015) (expert's "reliance on BLS data" as comparative context was "reasonable"). In any event, sector-specific data confirm this conclusion. Blockchain "initiatives exhibit[ed] an exceedingly high failure rate, with many failing to achieve sustainable success," and among technology companies that went public in 2023, only 33% were profitable despite a median age of six years. Dkt. 115-5 ¶¶ 32, 111; *see* Dkt. 115-22 at 893–894; Dkt. 115-27 at 14.

Plaintiffs also argue Dr. Ferri's use of the BLS data is unreliable because he failed to consider whether DistroMint was more likely to survive than other businesses because it "has a corporate partner." Br. 17. That misstates Dr. Ferri's testimony: he stated that he "d[id]n't know how to answer" Plaintiffs' question on this issue because it rested on "an incomplete hypothetical." Dkt. 112-1 at 109:8–16. He stated that, contrary to Plaintiffs' premise, the fact that nChain "stop[ped] funding development of DistroMint was a negative indication of its valuation." *Id.* at 110:8–12. Thus, Plaintiffs' reliance (Br. 18) on *Guinn v. AstraZeneca Pharms.*

---

[10] Plaintiffs' cases (Br. 17) are entirely inapposite. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1247–49 (11th Cir. 2002) (expert failed to establish relevant product and geographic markets in antitrust case); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 566–67 (11th Cir. 1998) (excluding expert's calculations that were based partly on Florida market data in case regarding Alabama market conspiracy); *MidAmerica*, 2023 WL 2733512, at *9 (expert's opinions were not linked to "any verifiable methodology"); *Louis Vuitton*, 525 F. Supp. 2d at 572–73 (premise of study by plaintiff's expert was at odds with plaintiff's own litigation position).

*LP*, 602 F.3d 1245 (11th Cir. 2010), and *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385 (S.D.N.Y. 2014), is misplaced. Dr. Ferri considered nChain's role; Plaintiffs just disagree with his conclusions.

### D. Dr. Ferri's Cost Approach Analysis Is Limited to Criticism of Haraminac's Analysis and Does Not Purport to Provide an Affirmative Valuation.

With respect to Dr. Ferri's analysis of Haraminac's cost approach, Plaintiffs contend that Dr. Ferri "adopted," but failed to independently verify, nChain's representation that it spent $675,000 on the DistroMint project; that he "cherry-pick[ed]" the record by adopting that figure while ignoring the $10 million figure in the proposed convertible debt arrangement set forth in the Restructure Proposal; and that he failed to consider the cost of rebuilding the DistroMint platform on a different blockchain. Br. 18–21. These arguments are unavailing.

1. <u>Plaintiffs Mischaracterize Dr. Ferri's Treatment of the $675,000 Figure.</u>

Dr. Ferri does not "adopt" the $675,000 as an affirmative valuation of DistroMint. His opinion as to the cost approach is limited to criticism of Haraminac's analysis—that her valuation under the cost approach is unsupported and unreasonable considering the record, including nChain's own costs. He states that, contrary to Haraminac's opinion that $675,000 is a "floor," the record suggests that figure is "an upper bound" for valuing DistroMint under the cost approach for three reasons: (i) the portion of the costs associated with BSV "would have lost

significant value due to the challenges faced by BSV"; (ii) Haraminac does not identify any demonstrated value from the costs incurred to build the platform; and (iii) Haraminac does not identify a potential buyer or investor willing to buy DistroMint or "to continue funding its development, launch, and/or operation," indicating that "investors did not view DistroMint as worth investing in." Dkt. 115-5 ¶¶ 74–75, 144–46.[11] In short, Dr. Ferri explains why Haraminac's decision to treat the $675,000 figure as a "floor," and then calculate a valuation more than 10 times higher, shows that her valuation "is overstated and unreliable." Dkt. 115-5 ¶ 146.[12]

Plaintiffs' reliance (Br. 20) on *Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*, 969 F. Supp. 2d 339 (S.D.N.Y. 2013), and *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016)—in which the experts, respectively, made an unsupported assumption and failed to explain a key decision—is therefore misplaced. Dr. Ferri does not adopt the $675,000 figure as his own, let alone do so without analysis or explanation. He simply uses the same benchmark that Haraminac uses and rebuts her conclusion.

[11] The $675,000 figure comes directly from a document nChain shared with Finnerud, and Haraminac herself relies on that figure as a purported "floor" for valuation. *See* Dkt. 115-2 at 7, 16. Dr. Ferri uses that figure to rebut Haraminac's cost approach, explaining that Haraminac disregards it in favor of her own baseless cost assumptions. *See* Dkt. 115 at 17–18.

[12] Plaintiffs offer no reason to doubt that nChain actually spent approximately $675,000 on the DistroMint project, and Dr. Ferri testified that he has no reason to do so. Dkt. 112-1 at 82:5–7.

2. Dr. Ferri Does Not "Cherry-Pick" the Record.

Dr. Ferri had no reason to include the $10 million figure from the Restructure Proposal in his analysis because it is not a cost or a valuation. Plaintiffs' argument overlooks that that figure does not represent a *cost*, so it would not be relevant under the cost approach.[13] Nor is it a valuation: under the convertible debt proposal, $10 million limits one element of the equation under which the proposed debt would convert to shares in the hypothetical operating company of the DistroMint platform should certain events occur. Dkt. 119-8 at 171:20–172:12. Even Haraminac acknowledges that the figure is "not an appraisal." Dkt. 115-2, Sch. 8. The number is also arbitrary. Dkt. 119-8 at 172:13–16. Accordingly, Dr. Ferri does not "place any weight on that [figure] in [his] valuation assessment." Dkt. 112-1 at 75:21–23. Plaintiffs offer no reason why he should have done so.

3. Plaintiffs Mischaracterize Dr. Ferri's Assessment of BSV.

Plaintiffs contend Dr. Ferri did not consider the cost to rebuild the DistroMint platform on a blockchain other than BSV, *see* Br. 21, but that argument fails. First, Dr. Ferri directly responds to Haraminac's observation of BSV's decline in value. As discussed above, that impairment is one reason, among others, why Dr. Ferri

[13] Plaintiffs' citation (Br. 20) to *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st Cir. 2014), is inapposite. There, the expert relied on data that was "often unrelated to the [plaintiffs'] allegations." *Id.* at 92. That is not an issue here. In any event, the $10 million figure was not a valuation or a measure of cost, so it was proper for Dr. Ferri not to consider it.

criticizes Haraminac's treatment of nChain's reported $675,000 in costs as a "floor." He explains that because, as noted in Haraminac's report, the decline of BSV contributed to the risk exposure for DistroMint, the BSV components of the platform "would have lost significant value," such that the value under the cost approach should have been less than what nChain paid to build the platform. Dkt. 115-5 ¶ 15. Dr. Ferri did not need to calculate hypothetical rebuilding costs to make that point. Second, Haraminac effectively conceded that any costs to rebuild the project on a different blockchain would not *increase* the value of DistroMint, and that the cost approach should not include "re-platforming" costs because in her view a buyer would choose to "recreate" the platform on a different blockchain. Dkt. 115-3 at 364:22–365:8. Plaintiffs' notion that a hypothetical buyer's choice to "re-platform" DistroMint would *increase*, rather than *decrease*, the price is nonsensical.

## III. PLAINTIFFS' HELPFULNESS CHALLENGES ALSO FAIL.

Finally, Plaintiffs challenge two parts of Dr. Ferri's report on the ground that they would not assist the jury. These arguments also fail.

### A. Dr. Ferri Does Not Opine as to nChain's Corporate Motive.

Plaintiffs argue Dr. Ferri improperly opines on nChain's corporate motive by stating that nChain's decision to stop funding the DistroMint platform was a "negative indication" of the project's value. Br. 22. This mischaracterizes Dr. Ferri's report. He does not opine *why* nChain stopped funding DistroMint; he merely notes

that nChain's decision raises an obvious inference that nChain did not find the project worthwhile. Dkt. 115-5 ¶ 72. That point is just common sense: if the project were valuable, no company, including nChain, would have stopped investing in it.

The cases (Br. 23) that Plaintiffs invoke are thus inapposite. Each motive case excluded an opinion that affirmatively characterized a party's intent. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004); *Pledger v. Reliance Tr. Co.*, 2020 WL 6101409, at *11 (N.D. Ga. Jan. 24, 2020); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998); *Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997). Dr. Ferri offers no such opinion.

Plaintiffs also argue that Dr. Ferri's observation "touch[es] on the legal conclusion of the nature of nChain's breach of its duties owed to Plaintiffs," and that he failed to consider factors that would increase DistroMint's value. Br. 24. These points are conclusory and baseless: Dr. Ferri offers no opinion as to legal questions such as whether nChain breached the alleged contract, and he testified that he could not think of any factors that would increase the value of DistroMint, not that he never considered whether any such factors existed. *See* Dkt. 112-1 at 151:21–152:3.[14]

**B. Dr. Ferri's Use of Market Data Is Permissible.**

Plaintiffs object to Dr. Ferri's discussion of "funding volumes, price volatility,

[14] Because Dr. Ferri offers no legal opinion, Plaintiffs' reliance (Br. 24) on *FNB Bank v. Park Nat. Corp.*, 996 F. Supp. 2d 1187, 1191–93 (S.D. Ala. 2014), is unavailing.

and market decline in the digital-asset sector." Br. 24. This is nonsensical: that data is undeniably relevant to the risks DistroMint faced and would assist the jury's deliberations. Plaintiffs do not even argue that the data is unreliable. That Plaintiffs dislike the data, or that the data is inconsistent with Haraminac's report, is not a basis for excluding it. On the contrary, the fact that this data is at odds with Haraminac's report underscores why it is important to Dr. Ferri's rebuttal: he uses it to show that companies like DistroMint faced significant challenges as of the valuation date.[15]

Plaintiffs' argument that this data is inadmissible and therefore should be excluded under Rule 403 also fails. Rule 703 provides that "[i]f experts in the particular field would reasonably rely on those kinds of … data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Plaintiffs do not dispute that the market data Dr. Ferri cites is of the type that a valuation expert would normally consider; nor could they. Haraminac herself applies this sort of market data—but does so incorrectly because she chooses improper comparator companies. *See* Dkt. 115 at 14–15.

**CONCLUSION**

For the reasons set forth above, the Court should deny the Motion.

[15] Plaintiffs' reliance (Br. 24) on *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008), is inapposite. *Mejia* concerns when an expert in a criminal case can rely on inadmissible hearsay. It has no bearing on Dr. Ferri's reference to relevant industry data.

This 16th day of October, 2026.

Respectfully submitted,

/s/ Samantha R. Mandell
Samantha R. Mandell
Georgia Bar No. 141689
STANTON LAW
410 Plasters Avenue NE, Suite 200
Atlanta, Georgia 30324
Tel. 404-881-1288
samantha.mandell@stantonlawllc.com

Rollo C. Baker IV (admitted *pro hac vice*)
Vivek Tata (admitted *pro hac vice*)
Jared Ruocco (admitted *pro hac vice*)
Sean Foley (admitted *pro hac vice*)
Elizabeth Baines (admitted *pro hac vice*)
ELSBERG BAKER & MARURI PLLC
Empire State Building
350 Fifth Avenue, 38th Floor
New York, New York 10118
Tel. 212-597-2600
rbaker@elsberglaw.com
vtata@elsberglaw.com
jruocco@elsberglaw.com
sfoley@elsberglaw.com
ebaines@elsberglaw.com

*Attorneys for Defendant and Counterclaim-Plaintiff nChain UK Ltd*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ERIC FINNERUD,<br>SOUND ALIVE ENTERPRISE, LLC, and<br>DISTROMINT, LLC,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>NCHAIN UK LTD,<br><br>*Defendant and Counterclaim-Plaintiff*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br>File No.: 1:24-cv-05280-SDG |

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 5.1 AND 7.1(D)**

I hereby certify that this brief has been prepared in Times New Roman 14-point font and otherwise conforms with the requirements of this Court's Local Rules.

This 16th day of October, 2026.

/s/ *Samanta R. Mandell*
Samantha R. Mandell

WITHOUT PREJUDICE TO JURISDICTION